CHARLES RAHT, as Executor, etc., Respondent, v. HENRY Y. ATTRILL, et al., MORTON, BLISS & Co., et al., Claimants, Appellants.

The lien of a mortgage attaches not only to the land in the condition in which it was at the time of its execution, but as changed or improved by accretions or by labor expended upon it while the mortgage is in existence; and creditors, whose debts were created for money, labor or materials used in the improvement, acquire no legal or equitable claim to displace or subordinate the lien of the mortgage for their protection.

The R. B. I. Co. was organized for the purpose of erecting and managing a hotel. It purchased lands subject to a mortgage, and to raise funds to build the hotel sold and hypothecated its bonds secured by a trust mortgage on the hotel property. Having exhausted all of its available means, and being indebted to a large amount for labor, materials, etc., before the completion of the building, in an action brought by a stockholder to dissolve the corporation, a receiver was appointed, who by an *ex parte* order in said action was authorized to borrow on his certificates $130,000 for the "purpose of paying the employes of said company," which certificates were declared by the order to be a first lien, prior to the trust mortgage. Neither the trustee nor the bondholders were then parties to the action, and they had no notice of the application for the order. Under said order $110,000 of certificates were issued by the receiver. On foreclosure of the original mortgage a surplus arose, and in proceedings to determine the priority of claims thereto *held*, the fact the company was owing debts for labor created no equity for their payment in preference to the bondholders; and that so much of the order as made the certificates prior liens was void.

In the surplus money proceedings the order was sought to be sustained on the ground that when it was granted a large number of laborers whose wages were in arrears were absolutely destitute, had become riotous, and threatened, unless paid, to burn the hotel building, and the referee found that but for the advancement of money on the certificates, which enabled the receiver to pay off the arrears of wages, the hotel and other property of the company "would, in all probability, have

been destroyed or seriously injured." *Held,* that this did not justify the order; that the debt so created by the receiver was not one for preservation; that it could not be assumed that the ordinary agencies of the law were insufficient to furnish the requisite protection.

Also, *held,* that the granting of the order without notice to the mortgagee or bondholders did not bind them as an adjudication; that they were entitled to notice and an opportunity to be heard.

*Wallace* v. *Loomis* (97 U. S. 146) ; *Fosdick* v. *Schall* (99 id. 235) ; *Barton* v. *Barbour* (104 id. 126) ; *Miltenberger* v. *L. R. Co.* (106 id. 286) ; *U. T. Co.* v. *Souther* (107 id. 591) ; *Burnham* v. *Bowen* (111 id. 776) ; *U. T. Co.* v. *I. M. R. R Co.* (117 id. 434, 456), distinguished.

(Argued March 15, 1887; decided October 4, 1887.)

APPEALS by various claimants from order of the General Term of the Supreme Court, in the second judicial department, made September 16, 1886, which reversed an order of Special Term confirming the report of a referee as to the disposition of surplus moneys arising on foreclosure sale herein.

This action was brought to foreclose a mortgage executed by defendant Attrill to one Littlejohn, and by him assigned to plaintiff's testator.

In February, 1880, the Rockaway Beach Improvement Company, limited, was organized under the business corporation act, chapter 611, Laws 1875. It bought over 100 acres of land at Rockaway Beach, subject to a purchase-money mortgage, which is the mortgage in suit. On April 1, 1880, said company executed a mortgage on the same property to William K. Soutter, trustee, to secure the payment of 700 bonds of $1,000 each. Twenty-six of these bonds were disposed of for value, the balance pledged at fifty cents on the dollar, as collateral for loans to the company. The company became embarrassed, and on August 2, 1880, Henry Y. Attrill, a large stockholder, began an action against it on behalf of himself and all other stockholders who should unite with him, praying for the appointment of a receiver and the dissolution of the company. A receiver was appointed who under various orders of the court, specified in the opinion herein, issued his certificates as therein stated. The order of the Special Term awarded the surplus to the holders of the receiver's certificates issued under the first order.

*John D. Cadwalader* for Morton, Bliss & Co. and others, appellants. As a general rule it is only interests in the land itself or liens upon it that have been cut off by a foreclosure sale that are transferred to surplus moneys arising upon such a sale and are entitled to be paid therefrom. (*Fliess* v. *Buckley*, 22 Hun, 554, 555; 24 id. 515; 90 N. Y. 286, 292; *People* v. *Bacon*, 99 id. 278.) But before there can be said to be any surplus, properly speaking, arising from a foreclosure sale, besides the mortgage debt and interest, and the costs, etc., of the foreclosure suit, certain charges on the property must be paid; these are what are called expenses of preservation. (*In re Regents C. I. W'ks. Co.*, L. R. 3 Ch. D. 411, 427.) When a receiver of a railroad is appointed, pending foreclosure, it is usual for the court to impose, as a condition of making the appointment, the equitable terms that current income earned by the road, while in the hands of a receiver, shall be applied to the discharge of certain claims " of a highly meritorious nature," such as arrearages of wages, debts for supplies, etc., incurred within a short time prior to the receivership, rather than to the payment of mortgage interest. (*Fosdick* v. *Schall*, 99 U. S. 235, 251; *Union Trust Co.* v. *Souther*, 107 id. 776, 783; *Burnham* v. *Bowen*, 111 id. 776, 783; *U. S. T. Co.* v. *N. Y., W. S. & B. R. Co.*, 25 Fed. R. 800, 802; Jones Railroad Securities, §§ 541, 542.) The unpaid operatives, etc., having become mutinous and threatened to destroy the property of the company, the court was authorized in directing a large issue of receiver's certificates. (*Ex parte Jordan*, 94 U. S. 248, 249; *Stevens* v. *N. Y. & O. M. R. R. Co.*, U. S. Cir. Ct. March 9, 1876; *A. M. & O. R. R. Case*, 3 Hughes, 320, 337, 338; *Wallace* v. *Loomis*, 97 U. S. 146, 162, 163; *Miltenberger* v. *L. R. Co.*, 106 id. 286, 311, 312; *Blair* v. *St. Louis H. & K. R. Co.*, 22 Fed. R. 471, 473; *Woodruff* v. *E. R. Co.*, 93 N. Y. 609, 623; *Union Trust Co.* v. *Ill. M. R. Co.*, 117 U. S. 434.) All debts incurred by a receiver for necessary repairs, and for the general protection and preservation of the property may be made a charge upon the *corpus* of the property itself. (*Meyer* v. *Johnson*, 53 Ala. 237, 345,

350; *Wallace* v. *Loomis*, 97 U. S. 146, 162, 163; *V. & C. R. R. Co.* v. *V. C. R. R. Co.*, 50 Vt. 500, 576; *Hoover* v. *Montclair, etc., R. R. Co.*, 29 N. J. Eq., 4; *Hale* v. *N. & L. R. R. Co.*, 60 N. H. 333, 341; *McLane* v. *P. & S. V. R. R. Co.*, 66 Cal. 606, 617–629; *Union Trust Co.* v. *Ill. M. R. Co.*, 117 U. S. 434, 454 *et seq.*) The operating expenses of an insolvent railroad are preferred, as necessary for the preservation of the property. (*Meyer* v. *Johnson*, 53 Ala. 237, 346; *Ellis* v. *B. H. & E. R. R. Co*, 107 Mass. 28; *Barton* v. *Barbour*, 104 U. S. 126, 134, 135; *Poland* v. *Lam. V. R. R. Co*, 52 Vt. 178; *Woodruff* v. *E. R. Co.*, 93 N. Y. 609, 620–622; *McLane* v. *P. & S. V. R. R. Co.*, 66 Cal. 606, 623; *U. T. Co.* v. *Ill. Mid. Ry. Co.*, 117 U. S. 434, 464, 465; *Met. Trust Co.* v. *T. V., etc., R. R. Co.*, 103 N. Y.) The test is whether it has been shown that the debts or expenses for which priority is claimed, were necessarily incurred for the protection or preservation of the property in the hands of the courts. (60 N. H. 341; *Scott* v. *Delahuni*, 65 N. Y. 128; *Woodruff* v. *Erie R. Co.*, 93 id. 609, 622, 623; *Meyer* v. *Car Co.*, 102 U. S. 13; *U. T. Co.* v. *Ill. Midland R. Co.*, 117 U. S. 463, 464.) Receiver's certificates are not in any sense commercial paper; and even in the hands of a *bona fide* holder for value, they are not good for what they purport to be, without proof of the circumstances under which they were issued. No intendment can be made as to their validity even, or as to the lien they may purport to create, from bare recitals on their face. (*Stanton* v. *A. & C. R. R. Co.*, 2 Woods, 506; *Newbold* v. *P. & S. R. R. Co*, 5 Bradw. [Ill.] 367; *Bank of Montreal* v. *C. C. & W. R. R.*, 48 Iowa, 518; *Turner* v. *P. & S. R. R. Co.*, 95 Ill. 134; *U. T. Co.* v. *C. & L. H. R. Co.*, 7 Fed. Rep. 513; *McCurdy* v. *Bowes* 88 Ind. 583, 586, 587; *U. T. Co.* v. *Ill. Mid. R. Co.*, 117 U. S. 456.) The debts and disbursements stated by receiver De Grauw to have been incurred by him, as receiver, are no lien upon the surplus moneys. (*In re Marine Mansions Co*, L. R. 4 Eq. 601; *In re Oriental Hotels Co.*, L. R. 12 Eq. 126; *In re Regents C. I. W'ks Co.*,

3 Ch. Div. 411, 427; *In re Dronf. S. Coal Co.*, 23 id. 513, 516.) The necessity of preserving the property in the hands of the court, on well established principles of equity, justified the creation of a prior equitable lien upon it, in favor of the parties who supplied the means for such preservation. (Jones Railroad Securities, §§ 541, 542; *Harvey* v. *Ill. Mid. R. Co.*, 28 Fed. Rep. 176.) A complete estoppel as against all other claimants exists in favor of the holders of the certificates representing the advances made the receiver for the preservation of the property, the other claimants having by their act acquiesced in raising the money. (*Battershall* v. *Davis*, 31 Barb. 323, 327; *Wallace* v. *Loomis*, 97 U. S. 146, 163; *Humphreys* v. *Allen*, 101 Ill. 490; *Credit Co.* v. *Ark. C. R. R. Co.*, 15 Fed. Rep. 46, 52; *Shaw* v. *Railroad Co.*, 100 U. S. 611, 612; *U. T. Co.* v. *Ill. Mid. Ry. Co.*, 117 id. 463, 464.)

*Clarence D. Ashley* for Attrill & Marache, appellants. All receiver's certificates issued to pay for the expenses properly incurred by the receiver, during the receivership, for the protection and preservation of the property in his charge, are a first lien on the fund herein, and should be paid in full in preference to the Soutter mortgage and other liens of record. (Kerr on Receivers [2d ed.], 2; *Woodruff* v. *E. R. Co.*, 93 N. Y. 609, 623; *Wallace* v. *Loomis*, 97 U. S. 146; *Miltenberger* v. *Logansport, etc., R. Co.*, 106 Ill. 286; *Met. T. Co.* v. *T., etc., R. R. Co.*, 4 Cent. Rep. 364; *U. T. Co.* v. *Ill. Mid. R. R. Co.*, 117 U. S. 456.) The Soutter mortgage being of prior record to all other record liens, has precedence over them. (*McKinstry* v. *Mervin*, 3 Johns. Ch. 466; *N. Y. L. Ins. & T. Co.* v. *Vanderbilt*, 12 Abb. Pr. 458, 460; *Stuyvesant* v. *Browning*, 33 N. Y. Super. 203; *Oppenheimer* v. *Walker*, 3 Hun, 30; *Ackerman* v. *Hunsicker*, 85 N. Y. 43; *Dunscomb* v. *N. Y. H. & N. R. R. Co.*, 84 id. 190; *S. C.*, 88 id. 1.) The $110,000 of receiver's certificates held by Morton, Bliss & Co., and others are not entitled to any preference, and have no lien on the surplus moneys herein, having been issued to pay for work done prior to the receivership. (*Met. T. Co.* v. *Ton., etc.,*

*R. R. Co.* 4 Cent. Rep. 364.) All certificates issued to pay for the proper and necessary care or protection of the property should be held to be of equal priority. (*Un. Tr. Co.* v. *Ill. Mid. R. R. Co.*, 117 U. S. 456, 477; *Wallace* v. *Loomis*, 97 id. 146.)

*James McNamee* for appellant. The court had the power to make the orders under which the certificates held by this defendant were issued, and to give such certificates a priority of lien, and this lien can be enforced in this proceeding. (*Met. Tr. Co.* v. *Ton. etc., R. R. Co.*, 8 N. E. R. 488; *Wallace* v. *Loomis*, 97 U. S. 146; *U. T. Co.* v. *Ill. Mid. R. Co.*, 117 U. S. 456; *Woodruff* v. *E. R. Co.*, 93 N. Y. 609, 623; *Stanton* v. *A. & C. R. R. Co.*, 2 Woods, 506; *Miltenberger* v. *Logansport R. R. Co.*, 106 U. S. 286, 311.) The receiver's certificates, issued to Drexel, Morgan & Co., Bliss & Co. and W. B. Hatch, are not entitled to any preference over those held by this defendant. (*Cowdrey* v. *Galveston R. R. Co.*, 11 Wall. 478; *Un. Tr. Co.* v. *Ill. Mid. R. R. Co.*, 117 U. S. 434; *Sanford* v. *McLean*, 3 Paige 142; *Gaus* v. *Thieme*, 93 N. Y. 225, 232.) The bondholders are estopped by their laches from denying the priority of the receiver's certificates, irrespective of the question whether they were issued for a proper purpose. (*U. T. Co.* v. *Ill. Mid. R. R. Co.*, 117 U. S. 434; *Att'y-Gen'l* v. *Cont. Ins. Co.*, 28 Hun, 360.) The most the bondholders could do was to contest the necessity and propriety of the orders under which the certificates in question were issued. (*Un. T. Co.* v. *Ill. Mid. R. R. Co*, 117 U. S. 434.)

*Edward S. Clinch* for appellants. Claims, however equitable, which had not matured into liens cannot be taken into consideration by the referee. (*Husted* v. *Dakin*, 17 Abb. 137; *King* v. *Selby*, 10 How. 333; *Bergen* v. *Carman*, 79 N. Y. 146.) The validity of the Soutter mortgage and of the bonds could be inquired into on this proceeding. (*Bergen* v. *Carman*, 79 N. Y. 146; *Kamp* v. *Kamp*, 59 id. 212;

*Windsor* v. *Mc Veigh*, 93 U. S. 274.) A receiver is not authorized to issue certificates to pay the claims of employes for labor performed before his appointment. (*Met. Tr. Co.* v. *Ton. V. & C. R. R. Co.*, 103 N. Y. 245.)

*Lewis Sanders* for bondholders and trustee, respondents. The court had no power to appoint a receiver. (Laws of 1870, Chap. 151, p. 422; *Gilman* v. *G. S. R. Co.*, 4 Lans. 482; High on Receivers, § 288; *Folger* v. *Col. I. Co.*, 99 Mass. 267, 275; *Wilmersdoefer* v. *L. M. Imp. Co.*, 18 Hun, 387.) The receiver's certificates were invalid, not having been issued in this action, and the action in which they were issued never having proceeded to judgment. (*Meyer* v. *Johnston*, 53 Ala. 348; *Un. Tr. Co.* v. *Walker*, 107 U. S. 596.) The validity of the receiver's certificates is open to attack whenever they are sought to be enforced. (*Windsor* v. *Mc Veigh*, 93 U. S. 277; *Kamp* v. *Kamp*, 59 N. Y. 217, 221.) The consideration for the certificates being against public policy and the public good, they are void. (*Egerton* v. *Brownlow*, 4 H. of L. C. 99, 100, 140, 148; *Keir* v. *Leeman*, 6 Q. B. 308; *Gilbert* v. *Sykes*, 16 East, 150; *Jones* v. *Randall*, Cowp. 37; *Cope* v. *Rowland*, 2 M. & W. 157; *Payne* v. *Wilson*, 74 N. Y. 348.) Receiver's certificates, to be a first lien, are issued only: *First.* In an action affecting a corporation serving a public use, such as a railroad, and where such company is in actual operation. (*Meyer* v. *Johnson*, 53 Ala. 237.) *Second.* Where the action is by a lienor. (High on Receivers, § 11; Jones on Securities, § 539.) *Third.* The certificates are entitled to preferences over mortgages only to the extent that current income has been diverted from payment of current expenses and applied to the benefit of the lienors. (*Fosdick* v. *Schall*, 99 U. S. 235; *Huidekoper* v. *Locomotive Works*, 99 U. S. 258, 260; *Burnham* v. *Rose*, 111 U. S. 782.) The Soutter bonds and mortgage valid. (*Curtis* v. *Leavitt*, 15 N. Y. 63; *Barry* v. *Merch. Exch. Co.*, 2 Sandf. Ch. 280, 289.)

ANDREWS, J.  The scheme set on foot by the principal stockholder, with the consent of a majority of the trustees of the Rockaway Beach Improvement Company, for the administration of its affairs and for the completion, furnishing and operating the hotel through the instrumentality of a receiver appointed by the court, has proved a signal and disastrous failure.  The receiver was appointed August 2, 1880, within six months after the organization of the company.  Prior to that date the company had expended more than $350,000, raised on the sale and hypothecation of its bonds, secured by the trust mortgage to Soutter, leaving the hotel building and structures but partially completed, and had exhausted all its available means, and was indebted in the sum of nearly $300,000 for labor, materials and furniture, which it had no means to pay. The receiver, a few days after his appointment, made his first application to borrow money on receiver's certificates, and on the 17th of August an order was made *ex parte* at Special Term, authorizing him to borrow $130,000, for the "purpose of paying the employes of said company," and to issue therefor certificates containing on their face a declaration that the debt represented thereby was "a debt of the receiver incurred for the benefit and protection of the property in his hands, and a first lien thereon prior to the mortgage to William K. Soutter, trustee, for $700,000, executed April 1, 1880, and to the interest on said mortgage."  From time to time thereafter, and up to May, 1881, orders of a similar character were obtained, authorizing the issuing of further certificates for money to "furnish, finish and operate the hotel," also with priority of lien over the Soutter mortgage. Certificates were issued under the various orders, to the amount in all of between $350,000 and $400,000, the proceeds of which presumably were used to carry forward the hotel enterprise.  In May, 1881, while the Attrill suit, in which the orders were granted, was pending, an action was commenced by the attorney-general to dissolve the corporation.  Thereafter, in September, 1881, an action was commenced by Raht, executor, to foreclose the original purchase-money mortgage

of $72,000, which went to a decree April 10, 1882, and under which the hotel property was sold January 31, 1883, making a surplus of $86,283.39, the distribution of which is the subject of the present controversy. It will be seen from this general statement that the efforts of the receiver to administer the property "for the benefit of all concerned," were terminated after a million dollars had been expended in improving it, in a sale of the whole property of the corporation for a sum of less than $200,000, and all that is left from the wreck for the payment of creditors, whose aggregate claims exceed $800,000, is the salvage of $86,000. This case illustrates what I apprehend has been the common experience where a court departing from its appropriate judicial function has undertaken to manage and carry on the business of a failing and insolvent corporation.

The principle controversy is between the mortgage creditors under the Soutter mortgage, and the holders of the $110,000 of certificates issued under the order of August 17, 1880. There is a controversey between the holders of the different classes of certificates. The holders of certificates, issued under the orders subsequent to August 17, 1880, insist that they are entitled to share ratably in the surplus with the holders of the certificates first issued, which claim has been adjudicated against them in this action. The question becomes unimportant if it shall be held that the mortgage creditors have the first lien on the fund in question, as their claims largely exceed the whole surplus.

Except for the provision in the order of August 17, 1880, giving to the certificates issued thereunder priority of lien to the Soutter mortgage, there, of course, could be no question as to the right of the bondholders to a preference. As between creditors by mortgage and general creditors, the former are entitled to priority of payment out of the mortgaged property by their contract, and by law of the land. The law recognizes the validity of contracts of mortgage and enforces them, subject to certain regulations for the protection of subsequent purchasers or

incumbrancers. The lien of the mortgage attaches not only to the land in the condition in which it was at the time of the execution of the mortgage, but as changed or improved by accretions, or by labor expended upon it while the mortgage is in existence. Creditors having debts created for money, labor or materials used in improving the mortgaged property, acquire on that account no legal or equitable claim to displace or subordinate the lien of the mortgage for their protection. The order of August 17, 1880, assumes to create a prior equitable lien in favor of the holders of certificates. This is put in the order on the ground that the debt authorized was for the benefit and protection of the property. There are no facts recited in the order, nor were any presented to the court in the affidavit upon which the order was granted, which afford the slightest justification for subverting and postponing the prior legal lien of the mortgage creditors, without their consent, to the debts authorized to be created by the order. The fact that the company was owing debts for labor, created no equity for their payment in preference to the bondholders. In view of our decision in the case of *Metropolitan Trust Company* v. *Tonawanda Valley and Cuba Railroad Company* (103 N. Y. 245), it is needless to say that however meritorious these claims were, this of itself presented no reason or justi- fication for paying them out of the property of the bondholders, by depriving them of the security pledged to them before the labor debts were contracted. The affidavit upon which the order of August 17th was based shows that the company was in serious financial embarrassment, but falls far short of disclosing any extraordinary emergency which called for extraordinary methods for the preservation of its property.

But the validity of the order, so far as it assumes to give priority to holders of certificates to be issued there- under, was sought to be supported on the inquiry before the referee in the surplus money proceedings, on a ground which was not presented to the court when the order was granted. This ground, as stated in the report of the referee, is, in substance, that a large number of workmen, comprising

eight hundred or a thousand men, whose wages, during May, June and July, were in arrears, but who had continued work under promises of payment, all of which had been broken, had reached a state of absolute destitution and, in many cases, of starvation, and that at the time the order was made they had stopped working, but remained on the premises and had become riotous in their language and demeanor and threatened, unless paid, to burn the hotel building and erections and personal property therein, and the referee found that but for the action of the bankers who took the certificates and advanced the funds by which the receiver was enabled to pay off the arrears of wages, the hotel and other property of the company " would, in all probability, have been destroyed or seriously injured."

The question presented is, whether these circumstances justified, or, if presented to the court, would have justified, the order preferring advances made thereunder to the lien of the mortgage. Before coming to this question, however, it is to be observed that the order was granted in a suit to which neither the trustee of the mortgage nor the bondholders were at the time parties, and without, so far as appears, any notice of the application for the order having been given to them or any of them. The original parties to the suit were Attrill, the principal stockholder of the company, who was plaintiff, and the corporation, The Rockaway Beach Improvement Company, which was sole defendant. On the 13th of August, 1880, an order was made on the application of the receiver, enjoining certain bondholders named from selling or transferring bonds issued under the Soutter mortgage, held by them in pledge, which order was served on the persons and firms named therein. But so far as appears they were not then made parties to the action, and the order was doubtless procured to arrest the apprehended danger of a sacrifice of the bonds by the pledgees, referred to in the complaint. This order gives no intimation of an intention to apply for an order authorizing the issue of receiver's certificates. Soutter, the trustee under the mortgage, was made a party defendant at a subsequent stage of the action, but after the certificates under

the order of August 17th were issued and the advances made. The granting of the order with out notice to the mortgagee or to the bondholders, did not bind them as an adjudication, assuming that the court had jurisdiction to appoint a receiver in the Attrill action, a point which will be assumed without examination. The bondholders, or their trustee, were entitled, by the plainest rules of law and justice, to notice and the right to be heard before their rights under the mortgage could be affected; and it was open to them on the hearing before the referee to contest the order, both on the facts and the law. · As was said by Blatchford, J., in *Union Trust Company* v. *Illinois Midland Company* (117 U. S. 434, 456), "the receiver, or those lending money to him or certificates issued on orders made without prior notice to parties interested, take the risk of the final action of the court in regard to the loans·"

On the merits we are of opinion that a case was not made out either before the court which granted the order or before the referee on the reference, which, within any recognized doctrine regulating or defining the powers of a court of equity in the administration of property through a receiver, justified the order of August 17th, postponing the lien of the Soutter mortgage. The power of a court to appoint a receiver when a proper case is presented, is undoubted. It rests in the sound discretion of the court. The power itself and the object of its exercise were stated long since with admirable clearness by Lord Hardwicke in *Skip* v. *Harwood* (3 Atk. 564): "It is a discretionary power exercised by the court with as great utility to the subject as any authority which belongs to it; and it is provisional only for the more speedy getting of a party's estate and securing it for the benefit of such person who shall appear to be entitled, and it does not at all affect the right." The act of the court in taking charge of property through a receiver is attended with certain necessary expenses of its care and custody; and it has become the settled rule that expenses of realization, and also certain expenses, which are called expenses of preservation, may be

incurred under the order of the court on the credit of the property, and it follows, from necessity, in order to the effectual administration of the trust assumed by the court, that these expenses should be paid out of the income, or when necessary, out of the *corpus* of the property before distribution, or before the court passes over the property to those adjudged to be entitled. It is claimed that the money advanced in this case to protect the property from an incendiary burning, created a debt for preservation, which may be preferred to the claim of the bondholders. We are of a contrary opinion. No doubt a serious emergency existed, growing out of the discontent and riotous disposition of the workmen. But the State primarily assumes the duty of the preservation of public order, and the repression and punishment of crime. It enacts laws, constitutes courts, and commissions officers to this end. It especially makes provision intended to prevent riots, and it seeks to insure prompt action on the part of local officers and communities by imposing upon the latter pecuniary responsibility for injuries to property caused by riotous assemblages. In this case no attempt, so for as appears, was made by the receiver or by the company to secure the intervention of the public authorities to suppress the apprehended disturbance, or to arrest those who threatened to burn the property of the company. It clearly ought not to have been assumed that the ordinary agencies of the law were inadequate to the situation, or that the law, operating through its regularly appointed channels, was impotent to control it. It would be difficult to define by a rule, applicable in every case, what are expenses of preservation which may be incurred by a receiver by authority of the court. It was said by JAMES, L. J., in *Regent's Canal Iron Works Company* (L. R. 3 Ch. Div. 411, 427), that "the only costs for the preservation of the property would be such things as the repairing of the property, paying rates and taxes which would be necessary to prevent any forfeiture, or putting a person in to take care of the property." Wherever the true limit is, we think it does not include the expenditure authorized by the order of August 17th,

and that such an expenditure is and ought to be excluded from the definition. There must be something approaching a demonstrable necessity to justify such an infringement of the rights of the mortgagees as was attempted in this case.

We have not lost sight of the recent very important cases decided in the Supreme Court of the United States, involving the question of the power which may be vested by the court in receivers of insolvent railroad corporations, and the right of the court to provide for the payment of certain debts contracted before or after the appointment of a receiver out of income, and if that is inadequate, out of the *corpus* of the property. These cases and decisions are the outcome of the growth of railroad enterprises and business within a comparatively recent period. It has been held that under special circumstances the court may direct the payment of ante-receivership debts for labor or supplies contracted within a limited period before the insolvency, the adjustment and payment of traffic balances in favor of connecting roads, and may direct the receiver to operate the road pending the foreclosure, and to that end purchase necessary rolling stock for the use of the road and make repairs and improvements thereon, the expense of which shall be a charge on the property in priority to legal liens. ( *Wallace* v. *Loomis,* 97 U. S. 146 ; *Fosdick* v. *Schall,* 99 id. 235 ; *Barton* v. *Barbour,* 104 id. 126 ; *Miltenberger* v. *Logansport Railway Co.,* 106 id. 286 ; *Union Trust Co.* v. *Souther,* 107 id. 591 ; *Burnham* v. *Bowen,* 111 id. 776 ; *Union Trust Co.* v. *Ill. Mid. and R. R. Co., supra.*) It cannot be successfully denied that the decisions in these cases vest in the courts a very broad and comprehensive jurisdiction over insolvent railroad corporations and their property. It will be found on examining these cases that the jurisdiction asserted by the court therein is largely based upon the public character of railroad corporations ; the public interest in their continued and successful operation ; the peculiar character and terms of railroad mortgages, and upon other special grounds not applicable to ordinary private corporations. It was said by WAITE, C. J., in *Fosdick* v. *Schall*

(*supra*), that railroad mortgages and the rights of railroad mortgagees are comparatively new in the history of judicial proceedings. They are peculiar in their character and affect peculiar interests ;" and, in *Barton* v. *Barbour* (*supra*), that "the new and changed condition of things which is presented by the insolvency of such a corporation as a railroad company has rendered necessary the exercise of large and modified forms of control of its property by the courts charged with the settlement of its affairs and the disposition of its assets." These cases furnish, we think, no authority for upholding the order of August 17th, or for subverting the priority of lien which, according to the general rules of law, the bondholders acquired through the trust mortgage on the property of the company. It would be unwise, we think, to extend the power of the court in dealing with property in the hands of receivers to the practical subversion or destruction of vested interests, as would be the case in this instance if the order of August 17th should be sustained. It is best for all that the integrity of contracts should be strictly guarded and maintained and that a rigid, rather than a liberal construction of the power of the court to subject property in the hands of receivers to charges, to the prejudice of creditors, should be adopted.

There is no ground for alleging an estoppel against the bondholders, barring their right to a review of the action of the court. The claim of estoppel is based upon the assumed fact that the trustee knew that a receiver had been appointed, and did not intervene to prevent the issuing of the certificates. The trustee at the time was not a party to the action, and had no notice of the application for the order, or of the issuing of the certificates until after the advances were made. He was designated as a trustee by the company before the bonds were issued, and was one of the directors and stockholders of the corporation, positions which might bring his duty and interest into conflict. It would be most unjust under the circumstances to conclude the bondholders by his inaction or for the reason that after the advances on the certificates had been made, he, as one of the board of directors and as a stockholder of the company, participated in the action

of meetings of directors and stockholders in which the order for the issuing of certificates was approved.

We perceive no valid reason why the expenses incurred by the reorganization committee under the reorganization scheme of 1881, and for which it is claimed a large portion of the bonds and other securities were pledged, may not be adjusted in this proceeding and the lien, therefor, if any, be enforced.

It is claimed that in any event there are certain expenses of the receivership chargeable against the fund in court. We do not perceive upon the facts presented that this claim has any foundation. However, we think a proper disposition of the appeal will be made by modifying the order of the General Term so as to make the reversal of the order of the Special Term absolute, leaving the parties to apply for a new reference, as they may be advised, on which all questions, except that of priority between the bondholders and creditors holding certificates, may be considered.

All concur.

Odered accordingly.

On subsequent motion to amend remittitur the following order was handed down :

*Ordered.* That the remittitur be amended as follows :

1. So as to declare that any of the parties on notice may apply to the court below for a new reference.

2. So as to provide that the reversal of the order of the Special Term shall be without prejudice to the right of the holders of receiver's certificates to offer proof on any further reference of an estoppel *in pais* in their favor as against individual holders of bonds of the Rockaway Beach Improvement Company, limited, and generally that any party may raise any questions, excepting only such as have been actually determined on the present appeal.

3. So as to provide that in case the claimants, Morton, Bliss & Co., Drexel, Morgan & Co., and W. B. Hatch, or any of them, have received under the order of the Special Term, the fund or any portion thereof, they shall not be liable to account for any greater amount than the sum or sums actually received by them, with legal interest.