THE FRANKLIN TRUST COMPANY, as Trustee, Respondent, *v.* THE NORTHERN ADIRONDACK RAILROAD COMPANY and Others, Defendants.

THE EMPLOYEES, OPERATIVES AND LABORERS OF THE NORTHERN ADIRONDACK RAILROAD COMPANY, Appellants.

*Mortgage foreclosure — receiver of a railroad — right of the employees in the funds received by him.*

Where in proceedings to foreclose a mortgage given to a trust company by a railroad corporation, a receiver is appointed *pendente lite* by an order which makes no provision for the payment of the outstanding debts incurred for the current expenses of the railroad, but which requires him to operate the road, to keep the same and the equipment thereof in repair, to keep it up to a proper standard of efficiency, and to pay out of the rents, income and profits of the road for all supplies necessary for that purpose, the receiver is a mere temporary officer of the court, whose sole duty it is to preserve the property during the litigation, and it is not within the scope of his authority to dispose of the corporate property of the road.

A receiver having such powers is not bound by the provisions of chapter 376 of the Laws of 1885, to give preference in payment to unpaid employees of the railroad corporation claiming under that statute to be paid for past-due wages.

Upon an appeal from an *ex parte* order directing the payment to the mortgagee of so much of the purchase money as had, pursuant to the judgment of foreclosure and sale, been paid into the custody of the court, the employees of the railroad, who were not parties to the foreclosure action and had never given

notice to the mortgagee of any claim on their part to the fund, are not in a position to claim that the mortgagee should be required to pay over to them, out of such purchase money, an amount equal to certain expenditures made by the receiver out of the earnings of the road for the purchase price of cars, the building of a bridge and the replacing of old ties by new, claimed to have been betterments increasing by such amount the purchase price realized upon the sale.

LANDON and HERRICK, JJ., dissented.

APPEAL by the Employees, Operatives and Laborers of the Northern Adirondack Railroad Company, from an order of the Supreme Court, made at the Clinton Special Term and entered in the office of the clerk of the county of Franklin on the 21st day of February, 1896, directing the payment of a sum of money to one "John P. Badger, Esq., to be by him distributed *pro rata* among such creditors by him as attorney herein represented," and also from an order, made at the Clinton Special Term and entered in the office of the clerk of the county of Franklin on the 17th day of February, 1896, directing the plaintiff to pay over to the mortgagees, or their successors in interest, represented by John L. Henning, what remains in the custody of said trust company of the sum so deposited in the action.

The first order above named audited a settling of accounts of the receiver appointed in the action as presented by him.

The plaintiff in this action held a mortgage in trust for the bondholders, which was executed to it by the Northern Adirondack Railroad Company on December 4, 1891. Such mortgage included all the property and franchise, earnings and betterments of the said company. On or about January 20, 1894, an action was commenced by the plaintiff to procure a judgment for the foreclosure of such mortgage and a sale of the property. On January 20, 1894, upon the application of the plaintiff, an order was made appointing a receiver of all the assets and property of such company during the pendency of the action. On January 25, 1894, such receiver took possession of such road and all the property of the company, among which was included $1,861.94 then in bank to the credit of such company. The receiver operated the road until it was sold under the judgment of foreclosure, and during that time he received from the earnings of the road a large sum of money, which, with the money in bank, amounted to the sum of $150,134.94. He paid out from

this amount a large sum for disbursements, leaving a balance in his hands at the time of his accounting of $1,260.22. From the amount so disbursed he paid the wages of all persons employed by him, and all the current expenses of operating the road. He also paid there-from the following items: Balance due from the company upon the purchase price of certain cars, purchased by it under a contract that such cars should remain the property of the vendors until paid for, amounting in all to $4,202.24. Also $1,550 expended in construct-ing a steel bridge in the place of a wooden one that had become too old and unsafe to use. These two items were disbursed by him under an order of the Supreme Court authorizing him to do so. Also $2,500 in replacing old and unsafe ties with new ones. The ties so replaced were in the bed of the road, and their condition rendered the operation of the road unsafe. Also $558.52, being for taxes, claimed by appellants not to be due until after the sale of the road.

The action proceeded to judgment, and on the 25th of May, 1895, all the mortgaged property, including the cars upon which the above payment was made, were sold at public auction. The amount of the bid was paid to the referee, in cash $15,000, and the balance in bonds secured by the mortgage. From the cash so paid, after deducting necessary expenses, etc., allowed by the judgment, the referee paid into court the sum of $8,269.54, to abide the further order of court. Upon such sale there was a deficiency of $43,312.12. Such sale was confirmed by an order of court made June 4, 1895.

At the time of the appointment of the receiver there was a large number of the employees of the railroad company to whom it was indebted for services up to that date, but there was no provision in the order appointing him, requiring or authorizing him to pay such liabilities of the company from any funds that came into his hands.

After the sale, and on June 5, 1895, a notice was served upon the receiver, in behalf of such employees, requiring him to pay such claims from " moneys received ' by him ' as such receiver," and noti-fying him that such employees would hold him responsible, to the extent of their claims, for all moneys that came into his hands, on the ground that they had a legal preference over all other claims. Such notice was accompanied by a detailed and verified statement of the names of the employees and the amount due to each.

Upon June twenty-second a notice of motion for an order requiring such receiver to account for all moneys received by him as such, and to pay to said employees the several amounts due each respectively, was served upon the receiver and upon the plaintiff and. the railroad company defendant. Such motion was made upon the notice and verified account previously served on the receiver, and upon affidavits showing the fact of non-payment by him, the receipt of funds and the expenditures as above stated. Such motion also asked for " such further or other relief, or both, as may be just."

The receiver also, upon petition, applied at the same term of court for a settlement of his accounts, a proper allowance for his services, and that he be discharged from his trust. The court at such term appointed a referee to take the account of such receiver, and ordered that the hearing of the motion in behalf of the employees be postponed until the coming in of such referee's report. The order appointing the referee also provided that such employees have notice of the accounting before the referee. An accounting by the receiver was had before the referee, at which the attorney for the said employees attended, and exceptions were by him duly taken to the items of expenditure by the receiver, which are hereinbefore particularly stated. He also objected to the amount charged by the receiver for attorney's fees and for his commissions, as being excessive. The referee allowed all such disputed items as correct credits to the receiver, to which findings exceptions were duly taken. Upon the coming in of such referee's report, it appeared that there was a balance of $1,260.22 in the receiver's hands.

On or about January 11, 1896, a notice was served by the attorney for the *receiver*, signed by him as such attorney, upon the attorney of the employees, of a motion to confirm the referee's report, and for an order discharging the receiver and finally disposing of the balance of the cash payment made by the purchaser in the foreclosure sale, which had been paid into court subject to its further order. Upon such notice, an order of the court was subsequently made at a term of court held February 10, 1896, substantially confirming the report of the referee, and directing that the balance of $1,260.22, thereby found to be in his hands, less certain allowed charges against the same, be paid over to the attorney for the employees for distribution among them. Such order also pro-

vided that the receiver and his bonds, after paying over such balance as therein directed, be forever discharged touching all matters relating to his receivership.   At the same term and on the same day, on motion of John L. Henning, as attorney and counsel for the mortgagees, an order was also made reciting that the receiver having accounted and been discharged, and there being no lawful claims against the amount of the purchase price received in the foreclosure sale and then being in court, it was, therefore, ordered that such sum be paid over to the mortgagees or their successors.   Such order seems to have been made without notice to the employees or other person and *ex parte* on the application of the mortgagee's attorney. From the last two orders the employees have appealed to this court.

*Badger & Ide,* for the appellants.

*John Winslow,* for receiver.

*John L. Henning,* for mortgagee and bondholders.

PARKER, P. J. :

The claim is made upon this appeal, on behalf of the employees, that, under well-settled principles of equity jurisprudence, the debts due to the employees of a railroad company, existing at the time a receiver is appointed of all its property, upon the application of the mortgagee in an action to foreclose his mortgage, have a preference in equity over any claim of the mortgagee as against the earnings which come to the receiver while he is operating the road.   Applying this principle to the circumstances of this case, they claim :

*First.* That the several sums which the receiver took from the earnings of the road and applied upon the purchase price of cars, and to the building of a bridge and the replacement of old by new ties, were in fact diverted from those who had an equitable right to the same, to the advantage of the mortgagee; that, therefore, they were not proper credits to allow the receiver upon his final accounting; that he must be deemed to have them still in his custody, and that he should be directed to pay such amount over to the employees.

*Second.* That, if such claim is not correct, then, inasmuch as such betterments added just so much to the value of the mortgaged prop-

erty, and the purchase price upon the sale was increased by just that amount, these employees have an equity in so much of the purchase money as is still in court, and that it should have been distributed to them instead of to the mortgagee.

They argue that, if the condition of the road was so unsafe that it should not have been run without these repairs, the receiver should be reimbursed by the mortgagee for the expense of these repairs, because it was run for the purpose of maintaining the value of the mortgagee's security, and in pursuance of an order of court obtained by it.

In the Federal courts, it is not unusual to provide, in the order appointing such a receiver, that all such debts as these appellants represent be paid by him from the earnings of the road. And from the decisions below cited it would seem as if, so far as the earnings of the road are concerned, these appellants are in equity entitled to a preference over the claims of the mortgagee. And possibly it would be held in those courts that, under the circumstances, an equity exists in favor of such creditors that, even though the receiver be allowed the several amounts applied to the repairs and improvements above stated, as expenditures properly made by him; yet that they have so plainly operated to increase the mortgagee's security that such mortgagee should be required to reimburse such outlay from the purchase money. (See *Fosdick* v. *Schall*, 99 U. S. 235, 256; *Burnham* v. *Bowen*, 111 id. 776, 783; *Union Trust Co.* v. *Illinois Midland Railway Co.*, 117 id. 434, 481.) Whether the tendency of decisions in our own courts would authorize us to so hold is not so clear. (*Met. Trust Co.* v. *T. V. & C. R. R. Co.*, 103 N. Y. 245.)

But the first question which is forced upon our attention is whether the appellants are here in a position which entitles them to fully raise that question or ask from us any such relief.

In the court below the appellants asked for an order requiring the *receiver* to pay their several claims. They thereby sought to reach the funds which came into *his* hands. They sought to impeach his accounts, so far as he had disbursed moneys for betterments, and to that extent to claim them from him, as if still under his control. No direct order was ever made upon that motion. The hearing was postponed until an accounting (which was ordered

before a referee upon the petition of the receiver), and the appellants attending upon that accounting there made the same claim and sought to secure a report in conformity with it. The referee, however, allowed to the receiver all those disputed items as proper credits and charged him only with the actual balance found in his hands. The court confirmed this report and directed such balance only to be paid over to the employees. Such order is one of those from which the appeal before us is taken.

If it was error to allow such disbursements to the receiver, if the receiver should be held personally to pay over to the employees the amounts so expended, then it will be our duty to reverse that order, for the employees were in fact parties to that accounting. By mutual consent their motion and the accounting under it were practically merged in the one instituted by the receiver, and they were received and recognized as parties to that proceeding, and were affected by the order made therein.

But it will be noticed that the question, whether the *mortgagee* should, under any circumstances, be required to reimburse the receiver for such expenditures, was not raised, either in the motion made by the employees against the receiver or in the proceedings in which the actual accounting was had. I cannot discover from the record before us that there has ever, at any time, been any claim made to the court below that it should order any of the purchase money derived from the foreclosure sale to be applied to the payment of the appellants' debts. Certainly, the motion made by the employees, above mentioned, did not refer to any such fund and did not ask for any such relief. True, the notice and papers on which it was founded were served on the mortgagee, but there was no intimation in the notice that the proceeds of the sale or any fund in which the mortgagee was interested were sought to be affected by that application. And in the proceedings upon the receiver's petition, in which the accounting was had before the referee, even if we should consider the mortgagee as having any notice of it, evidently no claim was there made which would affect the mortgagee's right to any part of the proceeds of the sale of the mortgaged property. The appeal from that order, therefore, does not bring up any question as to the liability of the mortgagee to reimburse the employees for any expenditure made by the receiver to its use or benefit.

After the receiver had accounted, the mortgagee, on its own motion, and apparently *ex parte*, applied for an order directing the payment to it of so much of the purchase money as the referee had been directed by the judgment of foreclosure to pay into court, and which was then in its custody ; and an order was made to that effect. The employees were not parties to the action of foreclosure ; they had never made any move in court to reach the money so directed to be paid over ; they have never yet given any notice to the mortgagee that they had any interest or equity in *that* fund, or made any objection to the order directing its payment to the mortgagee.

They have appealed from that order, and now ask us to reverse it, and to hold that such fund should have been paid over to them instead of to the mortgagee. They take such appeal, however, without ever having asked the court below to so hold, and without ever having given the mortgagee an opportunity to contest the genuineness of their debts, or the validity of this claim. We think that, so far as this *last order* is concerned, the appellants are not in a position to appeal therefrom.

The question before us, therefore, is narrowed down to this : Should the court below have charged against the receiver the several sums which he disbursed for repairs and in payment for cars and taxes ?

The order appointing the receiver made no provision whatever for the payment of the outstanding debts incurred for current expenses of the road. It did, however, require the receiver to continue the operation of the road ; " to keep the same and the equipment thereof in repair, to keep up to a proper standard of efficiency," etc., " and to pay out of the rents, income and profits thereof," etc., " for all supplies necessary for that purpose." It also, on his application for instructions, directed him to construct the new steel bridge and pay the balance due on the cars. As to the new ties, it is conceded as a fact that the expenditure of $2,500 for purchasing and laying them was necessary for the safe operation of the road. As a matter of fact, no claim was made to the receiver for payment of any of the debts which the appellants now present, until after all those disbursements had been made, nor did he until then have knowledge of the amounts or persons to whom they were due. Manifestly

there is no equity in charging against a receiver personally disbursements made under such circumstances as these. Even though it be conceded that the appellants had an equity which would authorize a court to award them a preference in such earnings, over the mortgage debt, yet they had no such fixed and certain lien upon or right to them as required the receiver to take notice of such lien, and provide for the payment of such debts. He was not required to advertise for such claims and retain from the earnings sufficient to provide for them. The decisions above cited do not sustain any such claim. They merely decide that the court *may* direct the receiver to pay them; but, in the absence of such directions, they impose no active duty upon the receiver to do so. Nor was any such obligation imposed upon the receiver by the provisions of chapter 376 of the Laws of 1885. That statute cannot, in our opinion, be made applicable to a receiver who has no other powers than to take charge of and manage the corporate property pending the foreclosure of a mortgage. It is not within the scope of such a receiver's authority, or the purpose of his appointment, to in any way *dispose* of corporate property. He is "a mere temporary officer of the court." (*Decker* v. *Gardner*, 124 N. Y. 338.) His sole duties are to preserve it during the litigation. Even though he he is, for the purpose of such preservation, required to continue its operation, he is not thereby invested with any power or duty to ascertain who are its creditors and to provide for their payment. A statute that requires a receiver to give preference to certain creditors of a corporation manifestly can only refer to a receiver who is appointed for the purpose, and who is given the authority to dispose of its property and discharge its debts. One who has no authority to do either of these things (except by special order of court) cannot be affected by the provisions of that statute.

The receiver in this matter, therefore, did not owe to these appellants the active duty of providing for the payment of their debts from the earnings that came into his hands, and hence he should not be held personally liable to them as having misapplied funds to which they were entitled.

These considerations lead to an affirmance of the order auditing and allowing the receiver's account, and to a dismissal of the appeal

from the order directing the payment to the mortgagee of so much of the purchase money as was still in the custody of the court.

No proceeding having been taken in the court below to enforce the claim that the mortgagee should reimburse these employees for so much of the earnings of the road as were diverted to its benefit, the appellants are not in a position to ask from us a consideration of that question.

The order confirming the referee's report and discharging the receiver and his bonds from all matters relating to his receivership is affirmed, with ten dollars costs and disbursements; and the appeal from the order directing the payment to the mortgagee of so much of the purchase money as was still in the custody of the court is dismissed, with ten dollars costs and disbursements.

All concurred, except Landon and Herrick, JJ., dissenting.

Landon, J. (dissenting):

Chapter 376, Laws of 1885, provides: "Where a receiver of a corporation created or organized under the laws of this State and doing business therein, other than insurance and moneyed corporations, shall be appointed, the wages of the employees, operatives and laborers thereof shall be preferred to every other debt or claim against such corporation, and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands."

The statute was in force when the mortgage was given, and, therefore, the mortgage was subject to the rule therein expressed, unless the receiver in the case of a mortgage foreclosure of a corporation's property is not the receiver of a corporation. (*Met. Trust Co.* v. *Tonawanda V. & C. R. R. Co.*, 103 N. Y. 245.) The case of *The U. S. Trust Co.* v. *N. Y., West Shore & B. R. Co.* (101 N. Y. 478) is cited as holding that the receiver in mortgage foreclosure is not the receiver of a corporation. What was there held was that the receiver in a mortgage foreclosure was not the receiver of a corporation within chapter 378, Laws of 1883. The court said that that was an act to prevent abuses in winding up insolvent corporations. Chapter 376, Laws of 1885, was passed to prevent the abuse of leaving the wages of the employees, operatives and laborers unpaid, an abuse more easily practiced in a mortgage foreclosure than in winding up the corporate business.

The courts of this State were not inclined to follow in this respect the more liberal practice of the Federal courts. (See *Raht* v. *Attrill*, 106 N. Y. 423, 436.) We should give effect to the plain mandate of the Legislature.

It was the duty of the receiver, therefore, to pay these laborers "from the moneys of such corporation which shall first come to his hands."

We think the order appealed from, so far as it refuses payment of the wages due the employees, operatives or laborers, should be reversed, with costs, and that the receiver be directed to pay such claims, and that to that end he be at liberty to apply to the court for such orders, and to take such further proceedings as will enable him to do so, as he may be advised.

The order to be settled by a justice of this court.

Order confirming referee's report and discharging the receiver and his sureties from all matters relating to his receivership affirmed, with ten dollars costs and disbursements; and the appeal from the order directing the payment to the mortgagee of so much of the purchase money as was still in the custody of the court dismissed, with ten dollars costs.