(Superior Court of Cincinnati.)
General Term, 1897.

## J. H. STURWOLD v. THE GEORGE VEHR PARLOR FRAME COMPANY.

---

Where a chattel mortgagee permits the property covered by his mortgage to go into the venture of a continuance of the business by a receiver, if the liabilities of the venture consume the property he must abide the result.

(But in a dissenting opinion it is held that where the chattel mortgagee does not become a party to the suit in which the receiver was appointed until after an order for the sale of the mortgaged property had been made, he is not estopped by the order to continue the business which was practically vacated by the order of sale.)

---

SMITH, J; HUNT, J., concurs.

On the 9th of April, 1896, Anna Dickhaus began an action in this court against the George Vehr Parlor Frame Company, a partnership engaged in the business of manufacturing parlor frames in Ohio. The plaintiff stated that she was a surety for said firm by reason of the endorsement of a promissory note of said firm; that she had no security for her liability on said note; that the defendant was largely indebted; that it was insolvent; that other claims were becoming due and remaining unpaid; that for the preservation of the property of the defendant it was necessary that a receiver of the firm be appointed and that its assets should be sold and equitably distributed among the creditors.

On the same day the defendant company filed an answer admitting the allegations of the petition to be true and joining in the prayer for the appointment of a receiver; and on the same day a receiver was appointed as prayed for.

On the 16th day of April an entry was made authorizing the receiver ''to run the factory of the defendant until such time as all the unfinished frames, now in various stages of construction, are completed, and all the stock now on

hand is worked up into chairs, sofas, divans, etc., and also to complete all frames of various sizes now being constructed for various parties; and to employ the person who has heretofore had charge of the books, and such other skilled mechanics and other laborers as are needed to carry on the business of selling and delivering said frames and working up unfinished frames and materials, and also to employ such other persons as may be necessary for the proper conduct of the business."

At the time of the appointment of the receiver the defendant company held a lease for ninety years, renewable forever, upon which its place of business was located; and the receiver continued to occupy said premises and to carry on the business there as directed by the order of April 16.

On July 2, the court ordered the receiver to "pay the ground rent due upon said property."

On August 11, J. H. Sturwold and certain other creditors were made parties to the case; and on August 16, J. H. Sturwold filed an answer and cross-petition in which he set up a claim against the defendant company for $4,340; that to secure the payment of the same the defendant company had executed a real estate mortgage upon the leasehold described, and a chattel mortgage upon "the boiler, engine, all machinery and tools, belting, shafting, furniture and fixtures on said real estate, together with other chattel property used in carrying on said business."

He prayed that the leasehold and chattel property might be sold and the proceeds applied to his debt and for all necessary and equitable relief.

On September 21 an order was made that the ground rents and taxes heretofore ordered to be paid by said receiver and all ground rents now due, or that may become due until said leasehold is sold, be charged to and paid out of the fund derived from the sale of the personal property of said George Vehr Parlor Frame Company, or that the same be charged to and paid out of the fund derived from the sale of the equity held by said co-partnership in the leasehold estate on which said ground rents were due or may become due, aforesaid.

On December 23 the receiver filed a motion to set aside the order of September 21 on the ground "that it was hastily made, without due consideration, and was a mistake, and that the same was prejudicial to the rights of other creditors."

This motion stood upon the docket without action being taken upon it.

During all of the time from the 16th of April the business was being run as directed under the order of that date, the stock on hand sold, various attempts made to sell the leasehold, but without avail (the same now remaining on hand, being reported by the receiver as an asset of no value); and on the 16th of December the machinery and chattels, covered by the chattel mortgage of Sturwold were sold.

The business was continually run at a loss, and the money received from its sales was consumed in running the business. The amount, however, realized from the sale of the machinery and chattels, covered by the chattel mortgage of Sturwold, amounting to $598, still remains in the hands of the receiver.

On February 5, 1897, Sturwold moved to set aside the orders of July 2, 1896, and September 21, 1896, which directed the receiver to pay the ground rent on the leasehold out of money coming into his hands as receiver, and upon the same day a motion was also filed by Sturwold and others for the distribution of the $598 remaining in the hands of Sturwold from the sale of the machinery.

Thereupon the court refused to set aside said order and ordered the receiver to apply the funds in his hands to the payment of the liabilities incurred by him in running the business, among which was the liability for the payment of $1,150 due upon said lease for ground rent.

To these orders Sturwold objected upon the ground that by virtue of the chattel mortgage upon the chattels covered by it, he was entitled to be paid out of the proceeds of the sale of the same, prior to any other claims, including those of the receiver; and he now prosecutes error to this court based upon this objection.

We do not think the disposition of the question here presented calls for an extended discussion or even a determination of the question as to the extent to which a court, when winding up a partnership or private corporation, is authorized to run the business through its receiver. For in this case we are of the opinion that there was an acquiescence by Sturwold in the order made to run this business, and that he is estopped now to claim that the court had no authority to make it.

It is contended by Sturwold, however, that he never acquiesced in the order.

It is true that when the order to run the business was made, viz., April 16, Sturwold was not a party to the action; but on August 11 he was made a party, and on August 16 he filed an answer in the case. Having become a party and having filed an answer in the case, certainly, in contemplation of law, at least from the date of filing his answer, he was chargeable with a knowledge of all the orders that had previously been made in the case; and further, as the court has stated in the bill of exceptions that Sturwold had no actual knowledge of the making of the order of July 2 and

September 21, it is fair to assume, in the absence of any such statement as to the other orders in the case, that Sturwold did have actual knowledge of them.

But it is urged that Sturwold was not obliged to manifest any dissatisfaction with the orders of the court under which a receiver was running the business; and that he might remain silent, reaping the benefit which might result from profitable business, but suffering no liability if the business should be unprofitable.

That a profitable business by the receiver would have been to his advantage is self-evident. It would have increased the assets of the defendant company, and consequently would have increased the dividends of the creditors, of whom Sturwold was one. As he permitted the property covered by his chattel mortgage to go into this venture, if the liabilities of the venture consume the property, why should he not abide by the result? The wit of man has never yet devised a plan which the law would uphold, by which one may enjoy the profits of a business enterprise without incurring some liability for its losses; and I can not think it either necessary, or profitable, to enter upon a research for authorities to illustrate a proposition which is so clearly founded on the principles of the plainest justice. The many authorities cited by counsel for plaintiff in his brief, which contains a very learned and interesting discussion of the powers of the courts to run a business, are not in conflict with the proposition just announced; and in illustration of that statement I call attention to the main case upon which counsel relies, viz.: Raht v. Attrell et al. (106 N. Y., 423). In that case, the court recognizing the fact that the power of a court to run the business of a private corporation without the assent of all interested is, to say the least, doubtful, impliedly conceded that circumstances might arise which would estop a party from complaining, but found that in that particular case no such circumstances were present. Thus, on page 437, the court said:

"There is no ground for alleging an estoppel against the bondholders barring their right to a review of the action of the court. The claim of estoppel is based upon the assumed fact that the trustee knew that a receiver had been appointed and did not intervene to prevent the issuing of the certificates. The trustee at the time was not a party to the action, and had no notice of the application for the order or of the issuing of the certificates, until after the advances were made."

It is true that if within a reasonable time, after having been made a party, Sturwold in any way had disclaimed his intention to acquiece in the running

COPYRIGHT, 1898, BY CARL G. JAHN.

of the business, there would be no ground for holding that the property covered by his chattel mortgage could be subjected to the expenses of the receivership, either before or after the time at which he was made a party; nor is it necessary in this case to determine whether it should be subjected to the payment of such expenses prior to August 16, at which time he filed his answer in this case; for the liabilities of the receiver since that day are sufficient to consume the fund in his hands many times over.

The order of distribution made by the court in Special Term will be affirmed.

Milton Sater, for plaintiff.

J. B. Swing, William Worthington, for defendants.

Dissenting Opinion.

WRIGHT, J.

I am unable to concur for the reason that, although the receiver had been authorized to continue the business, yet long prior to the time when the plaintiff in error became a party it had developed that the receiver was operating at a loss and an order had been actually entered directing the receiver to sell the entire plant and assets, including those covered by the chattel mortgage; this order was being actually executed at the very time the plaintiff in error was first made party. In short, when he came in the court was already proceeding in the doing of the very thing which he 'in his petition prayed for; that is to say, was proceeding with the sale of the mortgaged property; it had been advertised for sale and bids were then being received; no order to continue the business was ever made after he became a party. I am therefore at some loss to understand how he can be estopped by an order to continue, which was not only made, but had been practically vacated by an order of sale, before he became a party.

I agree that the plaintiff in error should be charged with whatever expense was necessary to the sale of the specific property caused by his mortgage, but no more.