MANUFACTURERS TRUST COMPANY, as Corporate Trustee by Merger of CHATHAM PHENIX NATIONAL BANK AND TRUST COMPANY, under a Certain Trust Mortgage Made by ROERICH MUSEUM to CHATHAM PHENIX NATIONAL BANK AND TRUST COMPANY, Corporate Trustee, and CHARLES C. MOORE, Individual Trustee, Dated as of June 15, 1928, Appellant, *v.* ROERICH MUSEUM, Respondent, Impleaded with ROERICH MUSEUM, INCORPORATED, and Others, Defendants.*

PHILIP J. DUNN and Another, Receivers, Respondents.

First Department, December 20, 1932.

* See, also, 236 App. Div. 76.

*J. M. Richardson Lyeth* of counsel [*John P. Allee* with him on the brief; *Carter, Ledyard & Milburn*, attorneys], for the appellant.

*Edward S. Greenbaum* of counsel [*Samuel J. Schur* with him on the brief; *Greenbaum, Wolff & Ernst*, attorneys], for the respondent Roerich Museum.

*Siegfried F. Hartman* of counsel, for the Bondholders' Protective Committee, Harvey Wiley Corbett, chairman.

TOWNLEY, J. The corporate trustee under a trust indenture made by the defendant museum in the amount of $2,075,000 to secure two series of bond certificates brought this action to foreclose the mortgage.

The mortgaged property is a twenty-nine story building at Riverside drive and One Hundred and Third street in the city of New York. The first three floors and part of the fourth floor are occupied by the Roerich Museum and its associated activities. In addition to this, officers and employees of the museum occupy approximately seventeen rooms free of rent. When the bonds were sold said defendant represented to the purchasers that it would pay an annual rental of $65,000 for twenty-one years. No such payment was ever made. On the payments due under the mortgage said defendant is concededly hopelessly in default and there are unpaid taxes aggregating approximately $130,000. Under the indenture rents, issues and profits of the mortgaged premises were specifically assigned from the date of any default under the mortgage to the corporate trustee " as further security for the performance of each and every of the covenants and obligations of the company under this indenture and in the said bond contained."

This application at Special Term was made to authorize the receivers to pay out $2,500 per month to be applied by the trustees of the museum on account of its support, maintenance and educational and cultural work. The motion was opposed by the corporate trustee and by a bondholders' committee representing about one-third in the principal amount of the bonds. It was supported by a second bondholders' committee representing a substantial amount of the bonds. The motion was granted to the extent of authorizing a payment of $1,350 per month on the ground that the museum's activities would otherwise be. discontinued, that such a discontinuance would result in a material curtailment of the revenue derived from the property because many tenants would possibly move if the activities were discontinued, and on the ground that the allowance would insure the continuance of the museum's activities during the foreclosure action which might be of prolonged duration.

It must be borne in mind that the receivers in this action are not appointed under a general receivership of the business of the defendant in which its general business activities might be entitled to consideration and possible protection. They are merely receivers in an action to foreclose a lien upon specific security, which includes the rents of the mortgaged property.

The law is well settled in this State, except in foreclosures involving public utilities, that the courts have no power to authorize receivers to spend money for any purpose other than the physical preservation of the property. This principle was clearly enunciated by the Court of Appeals in *Raht* v. *Attrill* (106 N. Y. 423). In that case certain expenditures were authorized by Special Term to protect the property from incendiarism by workmen. The court conceded that a serious emergency existed but said that the State primarily assumes the duty of the preservation of public order and that the threats of the workmen did not demonstrate such a necessity as would justify the infringement of the rights of the mortgagees. The court in its opinion (at p. 435) said: " It would be difficult to define by a rule, applicable in every case, what are expenses of preservation which may be incurred by a receiver by authority of the court. It was said by JAMES, L. J., in *Regent's Canal Iron Works Company* (L. R. 3 Ch. Div. 411, 427), that ' the only costs for the preservation of the property would be such things as * * * the repairing of the property, paying rates and taxes which would be necessary to prevent any forfeiture, or putting a person in to take care of the property.' * * * There must be something approaching a demonstrable necessity to justify such an infringement of the rights of the mortgagees as was attempted in this case. * * * It would be unwise, we think, to extend the power of the court in dealing with property in the hands of receivers to the practical subversion or destruction of vested interests, as would be the case in this instance if the order of August 17th should be sustained. It is best for all that the integrity of contracts should be strictly guarded and maintained and that a rigid, rather than a liberal construction of the power of the court to subject property in the hands of receivers to charges, to the prejudice of creditors, should be adopted."

This venture has never been a financial success. Its ability to continue even with the contribution which this order makes is extremely doubtful. To submit the security of these bondholders to such a hazard would destroy in part their vested lien on the rents and impair the obligation of the contract creating it. There is no relation between the disbursement proposed and the preservation of the physical property. There is no such "demonstrable

necessity " as the Court of Appeals has held must exist before such an order can be made.

The order should be reversed, with twenty dollars costs and disbursements, and the motion denied, with ten dollars costs.

FINCH, P. J., MERRELL, MARTIN and O'MALLEY, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with ten dollars costs.