FRANKLIN TRUST CO. v. NORTHERN ADIRONDACK R. CO. et al.

(Supreme Court, Appellate Division, Third Department. December 8, 1896.)

1. APPEAL—ISSUE NOT MADE IN TRIAL COURT.
   Employés of a railroad company who moved for an order against a receiver of the road pending an action of foreclosure, requiring him to pay wages due them at the time of his appointment, from money coming into his hands as such receiver, cannot appeal from an order directing payment to the mortgagee (plaintiff), of the proceeds of the foreclosure sale; not being parties to the action, and not having asked the application of such fund to their claims in the trial court.

2. RECEIVER—FOR RAILROAD PENDING FORECLOSURE—LIABILITY.
   A receiver appointed in an action to foreclose a mortgage on a railroad, who, under orders of the court, has paid out a portion of the earnings for repairs, taxes, and in making final payment on a contract for cars, for the preservation and protection of the property, is not liable to employés of the company having claims for wages due when he was appointed, when the order appointing the receiver contained no direction to pay such claims, and they were not presented for payment until after the money had been disbursed. Landon and Herrick, JJ., dissenting.

3. SAME—STATUTE.
   Laws 1885, c. 376, providing that, where a receiver of a corporation is appointed, the wages of its employés, operatives, and laborers shall be preferred to every other debt or claim against such corporation, does not apply to a temporary receiver of a railroad, appointed in an action of foreclosure, having no power to dispose of the corporate property, and whose powers are limited to the care and preservation of the mortgaged property pending the action. Landon and Herrick, JJ., dissenting.

Appeal from special term, Franklin county.

Action by the Franklin Trust Company, trustee, against the Northern Adirondack Railroad Company and others, for the foreclosure of a mortgage. Appeal on behalf of certain employés from two separate orders, one settling the accounts of the receiver, and the other directing the payment to the mortgagee of a portion of the purchase money of the railroad, paid into court on the foreclosure sale. Affirmed.

The plaintiff in this action held a mortgage in trust for the bondholders, which was executed to it by the Northern Adirondack Railroad Company, on December 4, 1891. Such mortgage included all the property and franchise, earnings and betterments, of the said company. On or about January 20, 1894, an action was commenced by the plaintiff to procure a judgment for the foreclosure of such mortgage and a sale of the property. On January 20, 1894, upon the application of the plaintiff, an order was made appointing a receiver of all the assets and property of such company, during the pendency of the action. On January 25, 1894, such receiver took possession of such road and all the property of the company, among which was included $1,861.94, then in bank to the credit of such company. The receiver operated the road until it was sold under the judgment of foreclosure, and during that time he received from the earnings of the road a large sum of money, which, with the money in bank, amounted to the sum of $150,134.94. He paid out from this amount a large sum for disbursements, leaving a balance in his hands at the time of his accounting of $1,260.22. From the amount so disbursed, he paid the wages of all persons employed by him, and all the current expenses of operating the road. He also paid therefrom the following items: Balance due from the company upon the purchase price of certain cars, purchased by it under a contract that such cars should remain the property of the vendors until paid for, amounting in all to $4,202.24. Also, $1,550, expended in constructing a steel bridge in the place of a wooden one that had become too old and unsafe to use. These two items were disbursed by him under an order of the supreme court authorizing him

to do so. Also, $2,500, in replacing old and unsafe ties with new ones. The ties so replaced were in the bed of the road, and their condition rendered the operation of the road unsafe. Also, $558.52, being for taxes, claimed by appellants to be not due until after the sale of the road. The action proceeded to judgment, and on the 25th of May, 1895, all the mortgaged property, including the cars, upon which the above payment was made, were sold at public auction. The amount of the bid was paid to the referee,—in cash $15,000, and the balance in bonds secured by the mortgage. From the cash so paid, after deducting necessary expenses, etc., allowed by the judgment, the referee paid into court the sum of $8,269.54, to abide the further order of court. Upon such sale there was a deficiency of $43,312.12. Such sale was confirmed by an order of court made June 4, 1895.

At the time of the appointment of the receiver, there were a large number of the employés of the railroad company to whom it was indebted for services up to that date; but there was no provision in the order appointing him requiring or authorizing him to pay such liabilities of the company from any funds that came into his hands. After the sale, and on June 5, 1895, a notice was served upon the receiver, in behalf of such employés, requiring him to pay such claims "from moneys received by him as such receiver," and notifying him that such employés would hold him responsible, to the extent of their claims, for all moneys that came into his hands, on the ground that they had a legal preference over all other claims. Such notice was accompanied by a detailed and verified statement of the names of the employés, and the amount due to each. Upon June 22d a notice of motion for an order requiring such receiver to account for all moneys received by him as such, and to pay to said employés the several amounts due each, respectively, was served upon the receiver, and upon the plaintiff, and the defendant railroad company. Such motion was made upon the notice and verified account previously served on the receiver, and upon affidavits showing the fact of nonpayment by him, the receipt of funds, and expenditures as above stated. Such motion also asked for "such further or other relief, or both, as may be just." The receiver also, upon petition, applied, at the same term of court, for a settlement of his accounts, a proper allowance for his services, and that he be discharged from his trust. The court, at such term, appointed a referee to take the account of such receiver, and ordered that the hearing of the motion in behalf of the employés be postponed until the coming in of such referee's report. The order appointing the referee also provided that such employés have notice of the accounting before the referee. An accounting by the receiver was had before the referee, at which the attorney for the said employés attended, and exceptions were by him duly taken to the items of expenditure by the receiver, which are hereinbefore particularly stated. He also objected to the amount charged by the receiver for attorney's fees, and for his commissions, as being excessive. The referee allowed all such disputed items as correct credits to the receiver, to which findings exceptions were duly taken. Upon the coming in of such referee's report, it appeared that there was a balance of $1,260.22 in the receiver's hands.

On or about January 11, 1896, a notice was served by the attorney for the receiver, signed by him as such attorney, upon the attorney for the employés, of a motion to confirm the referee's report, and for an order discharging the receiver, and finally disposing of the balance of the cash payment made by the purchaser in the foreclosure sale, which had been paid into court, and subject to its further order. Upon such notice, an order of court was subsequently made, at a term of court held February 10, 1896, substantially confirming the report of the referee, and directing that the balance of $1,260.22, thereby found to be in his hands, less certain allowed charges against the same, be paid over to the attorney for the employés, for distribution among them. Such order also provided that the receiver and his bonds, after paying over such balance as therein directed, be forever discharged touching all matters relating to his receivership. At the same term, and on the same day, on motion of John L. Henning, as attorney and counsel for the mortgagee, an order was also made reciting that, the receiver having accounted and been discharged, and there being no lawful claims against the amount of the purchase price received in the foreclosure sale, and then being in court, it was therefore ordered that such sum be paid over to the mortgagee or its successors. Such order seems to have been made without notice to the employés or other person, and ex parte on the application of the mortgagee's attorney. From the last two orders, the employés have appealed to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Badger & Ide, for appellants.
John Winslow, for receiver.
John L. Henning, for mortgagee and bondholders.

PARKER, P. J.    The claim is made upon this appeal, on behalf of the employés, that, under well-settled principles of equity jurisprudence, the debts due to the employés of a railroad company, existing at the time a receiver is appointed of all its property, upon the application of the mortgagee in an action to foreclose his mortgage, have a preference in equity over any claim of the mortgagee, as against the earnings which come to the receiver while he is operating the road.    Applying this principle to the circumstances of this case, they claim:    First. That the several sums which the receiver took from the earnings of the road, and applied upon the purchase price of cars, and to the building of a bridge, and the replacement of old by new ties, were, in fact, diverted from those who had an equitable right to the same, to the advantage of the mortgagee; that, therefore, they were not proper credits to allow the receiver upon his final accounting; that he must be deemed to have them still in his custody; and that he should be directed to pay such amount over to the employés.    Second. That, if such claim is not correct, then inasmuch as such betterments added just so much to the value of the mortgaged property, and the purchase price upon the sale was increased by just that amount, these employés have an equity in so much of the purchase money as is still in court, and that it should have been distributed to them, instead of to the mortgagee.    They argue that, if the condition of the road was so unsafe that it should not have been run without these repairs, the receiver should be reimbursed by the mortgagee for the expense of these repairs, because it was run for the purpose of maintaining the value of the mortgagee's security, and in pursuance of an order of court obtained by it.

In the federal courts it is not unusual to provide, in the order appointing such a receiver, that all such debts as these appellants represent be paid by him from the earnings of the road; and, from the decisions below cited, it would seem as if, so far as the earnings of the road are concerned, these appellants are, in equity, entitled to a preference over the claims of the mortgagee; and, possibly, it would be held in those courts that, under the circumstances, an equity exists in favor of such creditors, and, even though the receiver be allowed the several amounts applied to the repairs and improvements above stated as expenditures properly made by him, yet that they have so plainly operated to increase the mortgagee's security that such mortgagee should be required to reimburse such outlay from the purchase money.    See Fosdick v. Schall, 99 U. S. 235, 256;  Burnham v. Bowen, 111 U. S. 776, 783, 4 Sup. Ct. 675;  Union Trust Co. of New York v. Illinois Midland Ry. Co., 117 U. S. 434, 481, 6 Sup. Ct. 809.    Whether the tendency of deci-

sions in our own courts would authorize us to so hold is not so clear. Metropolitan Trust Co. of New York v. Tonawanda & C. R. Co., 103 N. Y. 245, 8 N. E. 488.

But the first question which is forced upon our attention is whether the appellants are here in a position that entitles them to fully raise that question, or ask from us any such relief. In the court below, the appellants asked for an order requiring the receiver to pay their several claims. They thereby sought to reach the funds which came into his hands. They sought to impeach his accounts, so far as he had disbursed moneys for betterments, and to that extent to claim them from him, as if still under his control. No direct order was ever made upon that motion. The hearing was postponed until an accounting (which was ordered before a referee, upon the petition of the receiver), and the appellants, attending upon that accounting, there made the same claim, and sought to secure a report in conformity with it. The referee, however, allowed to the receiver all those disputed items, as proper credits, and charged him only with the actual balance found in his hands. The court confirmed this report, and directed such balance only to be paid over to the employés. Such order is one of those from which the appeal before us is taken. If it was error to allow such disbursements to the receiver,—if the receiver should be held personally to pay over to the employés the amounts so expended, —then it will be our duty to reverse that order, for the employés were, in fact, parties to that accounting. By mutual consent, their motion and the accounting under it were practically merged in the one instituted by the receiver, and they were received and recognized as parties to that proceeding, and were affected by the order made therein. But it will be noticed that the question whether the mortgagee should, under any circumstances, be required to reimburse the receiver for such expenditures, was not raised, either in the motion made by the employés against the receiver, or in the proceedings in which the actual accounting was had. I cannot discover from the record before us that there has ever, at any time, been any claim made to the court below that it should order any of the purchase money derived from the foreclosure sale to be applied to the payment of the appellants' debts. Certainly, the motion made by the employés, above mentioned, did not refer to any such fund, and did not ask for any such relief. True, the notice and papers on which it was founded were served on the mortgagee; but there was no intimation in the notice that the proceeds of the sale, or any fund in which the mortgagee was interested, were sought to be affected by that application; and in the proceedings upon the receiver's petition, in which the accounting was had before the referee, even if we should consider the mortgagee as having any notice of it, evidently no claim was there made that would affect the mortgagee's right to any part of the proceeds of the sale of the mortgaged property. The appeal from that order, therefore, does not bring up any question as to the liability of the mortgagee to reimburse the employés for any expenditure made by the receiver to its use or benefit.

After the receiver had accounted, the mortgagee, on its own motion, and apparently ex parte, applied for an order directing the payment to it of so much of the purchase money as the referee had been directed, by the judgment of foreclosure, to pay into court, and which was then in its custody; and an order was made to that effect. The employés were not parties to the action of foreclosure. They had never made any move in court to reach the money so directed to be paid over. They have never yet given any notice to the mortgagee that they had any interest or equity in that fund, or made any objection to the order directing its payment to the mortgagee. They have appealed from that order, and now ask us to reverse it, and to. hold that such fund should have been paid over to them, instead of to the mortgagee. They take such appeal, however, without ever having asked the court below to so hold, and without ever having given the mortgagee an opportunity to contest the genuineness of their debts or the validity of this claim. We think that, so far as this last order is concerned, the appellants are not in a position to appeal therefrom.

The question before us, therefore, is narrowed down to this: Should the court below have charged against the receiver the several sums which he disbursed for repairs, and in payment for cars and taxes? The order appointing the receiver made no provision whatever for the payment of the outstanding debts incurred for current expenses of the road. It did, however, require the receiver to continue the operation of the road; "make all repairs; keep up a proper standing of efficiency," etc.; "and pay all such expenses out of the rents, income, and profits of the road." It also, on his application for instructions, directed him to construct the new steel bridge, and pay the balance due on the cars. As to the new ties, it is conceded as a fact that the expenditure of $2,500 for purchasing and laying them was necessary for the safe operation of the road. As a matter of fact, no claim was made to the receiver for payment of any of the debts which the appellants now present, until after all those disbursements had been made; nor did he until then have knowledge of the amounts or persons to whom they were due. Manifestly, there is no equity in charging against a receiver personally disbursements made under such circumstances as these. Even though it be conceded that the appellants had an equity which would authorize a court to award them a preference, in such earnings, over the mortgage debt, yet they had no such fixed and certain lien upon or right to them that required the receiver to take notice of such lien, and provide for the payment of such debts. He was not required to advertise for such claims, and retain from the earnings sufficient to provide for them. The decisions above cited do not sustain any such claim. They merely decide that the court may direct the receiver to pay them; but, in the absence of such directions, they impose no active duty upon the receiver to do so. Nor was any such obligation imposed upon the receiver by the provisions of chapter 376 of the Laws of 1885. That statute cannot, in our opinion, be made applicable to a receiver who has no other powers than to take charge of and manage the cor-

porate property pending the foreclosure of a mortgage. It is not within the scope of such a receiver's authority, or the purpose of his appointment, to in any way dispose of corporate property. He is "a mere temporary officer of the court." Decker v. Gardner, 124 N. Y. 338, 26 N. E. 814. His sole duties are to preserve it during the litigation. Even though he is, for the purpose of such preservation, required to continue its operation, he is not thereby invested with any power or duty to ascertain who are its creditors, and to provide for their payment. A statute that requires a receiver to give preference to certain creditors of a corporation, manifestly, can only refer to a receiver who is appointed for the purpose, and who is given the authority to dispose of its property, and discharge its debts. One who has no authority to do either of these things (except by special order of court) cannot be affected by the provisions of that statute. The receiver in this matter, therefore, did not owe to these appellants the active duty of providing for the payment of their debts, from the earnings that came into his hands; and hence he should not be held personally liable to them, as having misapplied funds to which they were entitled.

These considerations lead to an affirmance of the order auditing and allowing the receiver's account, and to a dismissal of the appeal from the order directing the payment to the mortgagee of so much of the purchase money as was still in the custody of the court.

No proceeding having been taken in the court below to enforce the claim that the mortgagee should reimburse these employés for so much of the earnings of the road as were diverted to its benefit, the appellants are not in a position to ask from us a consideration of that question.

The order confirming the referee's report, and discharging the receiver and his bonds from all matters relating to his receivership, is affirmed, with $10 costs and disbursements; and the appeal from the order directing the payment to the mortgagee of so much of the purchase money as was still in the custody of the court is dismissed, with $10 costs and disbursements.

MERWIN and PUTNAM, JJ., concur.

LANDON, J. (dissenting). Chapter 376, Laws 1885, provides:

"Where a receiver of a corporation created or organized under the laws of this state and doing business therein, other than insurance and moneyed corporations, shall be appointed, the wages of the employees, operatives and laborers thereof shall be preferred to every other debt or claim against such corporation, and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands."

The statute was in force when the mortgage was given, and therefore the mortgage was subject to the rule therein expressed, unless the receiver, in the case of a mortgage foreclosure of a corporation's property, is not the receiver of a corporation. Metropolitan Trust Co. v. Tonawanda Valley & C. R. Co., 103 N. Y. 245, 8 N. E. 488. The case of United States Trust Co. v. New York, W. S. & B. R. Co.,

101 N. Y. 478, 5 N. E. 316, is cited as holding that the receiver in mortgage foreclosure is not the receiver of a corporation. What was there held was that the receiver in a mortgage foreclosure was not the receiver of a corporation, within chapter 378, Laws 1883. The court said that that was an act to prevent abuses in winding up insolvent corporations. Chapter 376, Laws 1885, was passed to prevent the abuse of leaving the wages of the employés, operatives, and laborers unpaid,—an abuse more easily practiced in a mortgage foreclosure than in winding up the corporate business. The courts of this state were not inclined to follow in this respect the more liberal practice of the federal courts. See Raht v. Attrill, 106 N. Y. 423, 436, 13 N. E. 282. We should give effect to the plain mandate of the legislature. It was the duty of the receiver, therefore, to pay these laborers "from the moneys of such corporation which first came to his hands."

We think the order appealed from, so far as it refuses payment of the wages due the employés, operatives, or laborers, should be reversed, with costs, and that the receiver be directed to pay such claims, and that to that end he be at liberty to apply to the court for such orders, and to take such further proceedings as will enable him to do so, as he may be advised. The order to be settled by a justice of this court.

HERRICK, J., concurs.