CENTRAL TRUST COMPANY OF NEW YORK, Plaintiff, *v.* THE PITTSBURG, SHAWMUT AND NORTHERN RAIL-ROAD COMPANY et al., Defendants.

FRANK SULLIVAN SMITH, as Receiver of THE PITTS-BURG, SHAWMUT AND NORTHERN RAILROAD COMPANY, Appellant; CENTRAL TRUST COMPANY OF NEW YORK, as Trustee under a Mortgage of THE CENTRAL NEW YORK AND WESTERN RAILROAD COMPANY, et al., Respondents.

Receivers — railroads — power of courts to authorize receiver of insolvent railroad corporation to borrow money to maintain and operate railroad — priority of receiver's certificates over preceding mortgage and other liens on railroad property — when such lienors deemed to have had actual notice — effect of voluntary appearance of lienors upon application for receiver's certificates.

1. When all the property of a railroad corporation is temporarily in the immediate control of a court of general jurisdiction and in the possession of a receiver, and it appears necessary to expend a sum of money not then available to reasonably maintain the property in its integrity as a railroad, the court may not only authorize the receiver to borrow the money for such expenditure, but may exercise the power which it possesses in equity over the property so within its control and make the certificates of indebtedness therefor a lien thereon.

2. If it is necessary to enable the receiver so to borrow the money and it appears to be of sufficient importance to the public and the persons directly interested in the property, such receiver's certificates may be made a lien prior to all other liens on the property of the corporation. Equity may require that the lien of a judgment of foreclosure and sale, like that of a mortgage, be subordinated to that of receiver's certificates issued to raise money for the maintenance and preservation of the property.

3. Although power exists in the court to act in the cases mentioned without consent and without notice, the authority so granted is subject to review when the parties interested and opposed to the exercise of the authority are properly before the court, and those who take receiver's certificates must be deemed to have taken them subject

to the rights of parties who have prior liens upon the property, and who have not, but should have been, brought before the court.

4. The receiver of the railroad property in question, who was appointed under a junior mortgage, petitioned the court for authority to issue certificates of indebtedness to raise money alleged to be necessary for the benefit, protection and preservation of the mortgaged property, and orders were from time to time made granting such authority. This motion was made for an order authorizing the issue of such certificates to pay certificates of like character theretofore issued. The Appellate Division held that the Special Term did not have power to determine the question of the priority of the receiver's certificates upon the application and the papers before it as against the first mortgage bondholders or their trustee named in said first mortgage and for that reason the order of the Special Term authorizing such issue was reversed. The Appellate Division did not consider on the merits the question as to the necessity for and advisability of making the order as made by the Special Term. *Held*, that while the holder of bonds issued under a prior mortgage was not a party to the action in which the order granting leave to issue certificates herein was made, it had actual notice of the motion and it was represented in court by counsel and thus had a full opportunity to be heard thereon, and that such a notice and opportunity to be heard was, for the purposes of the motion made herein, a notice to the holder of these bonds, and that it should have presented to the court such facts as were in its possession and such arguments as it desired to make relating to the necessity for and advisability of renewing the certificates as prayed for in the petition.

*Central Trust Co.* v. *Pittsburg, S. & N. R. R. Co.*, 179 App. Div. 607, reversed.

(Argued March 1, 1918; decided May 7, 1918.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 20, 1917, which reversed an order of Special Term authorizing an issue of receiver's certificates in so far as it provided that the lien of such certificates should be prior to that of a first mortgage covering certain of the railroad properties.

The following question was certified: "Had the Special Term power to determine the question of the priority

of the receiver's certificates, upon the motion and the papers before it, as against the first mortgage bondholders or their trustee, named in the first mortgage? "

The facts, so far as material, are stated in the opinion.

*Alton B. Parker* and *Frank Sullivan Smith* for appellant. In railroad receivership cases, a lien may be impressed upon the *res* or thing or fund as equity terms it, prior to all other liens without notice. (*Union Trust Company* v. *Illinois Midland Company*, 117 U. S. 434; *Knickerbocker T. Co.* v. *O., C. & R. S. Ry. Co.*, 201 N. Y. 379; *Wallace* v. *Loomis*, 97 U. S. 146.) Equity regards the entire property of an insolvent railroad corporation as a trust fund to be administered by the court. Such trust fund to be employed and distributed as follows: *First*, to be employed to keep the railroad in operation for the public good, which equity deems the highest interest. The method adopted to secure the moneys for that purpose is by the court's order to impress a lien prior to all other liens for the payment of receiver's certificates to be issued thereunder. *Second*, the fund to be distributed pursuant to final decree: A, to pay the expenses incurred by the court or its officer, including the receiver's certificates; B, to pay the mortgage bondholders and other lienors in order of priority; C, to pay the unsecured debts, and D, to divide the sums remaining among the stockholders. (*Knickerbocker Trust Co.* v. *O., C. & R. S. Ry. Co.*, 201 N. Y. 379; *Raht* v. *Attrill*, 106 N. Y. 423; *Vilas* v. *Page*, 106 N. Y. 439; *Wallace* v. *Loomis*, 97 U. S. 146; *Barton* v. *Barbour*, 104 U. S. 126; *Miltenberger* v. *Logansport Ry. Co.*, 106 U. S. 286; *Union Trust Co.* v. *Illinois Midland R. Co.*, 117 U. S. 434; *Central Trust Co.* v. *Marietta & N. G. R. Co.*, 75 Fed. Rep. 193; 75 Fed. Rep. 209; *Kneeland* v. *Luce*, 141 U. S. 491; *V. & A. Coal Co.* v. *Central Railroad & Banking Co. of Georgia*, 170 U. S. 355.)

*Arthur H. Van Brunt* and *Orville C. Sanborn* for Central Trust Company, respondent. The Special Term did not have jurisdiction of the persons or parties sought to be affected by its order, namely, the trustee or holder of bonds under the mortgage of the Central New York and Western Railroad Company, dated December 15, 1892, and, therefore, did not have power to grant said order. (*Fifth Avenue Bank* v. *Cudlipp,* 1 App. Div. 524; *Emigrant Industrial Savings Bank* v. *Goldman,* 75 N. Y. 127; *Woodworth* v. *Blair,* 112 U. S. 8, 11; *Boatmen's Bank* v. *Fritzlen,* 135 Fed. Rep. 650; *Smith* v. *Roberts,* 91 N. Y. 470; *Jerome* v. *McCarter,* 94 U. S. 734; *Morris* v. *Morange,* 38 N. Y. 172; *Wager* v. *Link,* 134 N. Y. 122; *Bolles* v. *Duff,* 43 N. Y. 469; Cardozo, Jurisdiction of the Court of Appeals [2d ed.], § 78; *Heath* v. *N. Y. B. L. B. Co.,* 146 N. Y. 260; *Stannard* v. *Hubbell,* 123 N. Y. 520, 526; *Bronson* v. *Schulten,* 104 U. S. 410; *Brooks* v. *Railroad Company,* 102 U. S. 107; *New York Life Ins. Co.* v. *Dunlevy,* 241 U. S. 518; *Wetmore* v. *Karrick,* 205 U. S. 141.) The Special Term did not have jurisdiction of the property or *res* sought to be affected by the order in question. (*Pennsylvania Steel Co.* v. *New York City Ry. Co.,* 198 Fed. Rep. 721; *Scott* v. *Armstrong,* 146 U. S. 499; *Quincy, etc., Railroad Co.* v. *Humphreys,* 145 U. S. 82.) The result sought to be accomplished by the order of May 19, 1917, was in effect the collateral impairment of an outstanding judgment, namely, the decree in the foreclosure of the mortgage of the Central New York and Western Railroad Company, dated December 15, 1892, duly entered in the office of the clerk of Allegany county on May 10, 1907. (*Parham* v. *Burns,* 135 App. Div. 884; 201 N. Y. 559; *Jordan* v. *Van Epps,* 85 N. Y. 427; *Drake* v. *N. Y. S. W. Co.,* 36 App. Div. 275; *White* v. *Crow,* 110 U. S. 183; *Phœnix Mills* v. *Miller,* 12 N. Y. Supp. 268; *A. B. S. & F. Co.* v. *P. M. R. R. Co.,* 205 Fed. Rep. 14.) The attempt of the receiver to reissue

and exchange his certificates is, in effect, an attempt to alter the status of the certificates of the receiver by a *nunc pro tunc* amendment of the court's proceeding, which was condemned by this court on the previous appeal. (*Central Trust Co.* v. *P., S. & N. R. R. Co.,* 220 N. Y. 690.)   The notice to Pacific Improvement Company as the owner of bonds secured by the mortgage of the Central New York and Western Railroad Company on the reissuance of the receiver's certificates is totally unavailing to subordinate to the lien of said certificates the bonds secured by said mortgage as merged in the judgment of foreclosure dated May 9, 1907.  (*Lehman* v. *Trust Co. of America,* 49 So. Rep. 502; *Parham* v. *Burns,* 135 App. Div. 884; 201 N. Y. 559; *Jordan* v. *Van Epps,* 85 N. Y. 427; *White* v. *Crow,* 110 U. S. 183; *Colorado & So. Ry. Co.* v. *Blair,* 214 N. Y. 497; *Pennoyer* v. *Neff,* 95 U. S. 714; *Reynolds* v. *Ætna Life Ins. Co.,* 160 N. Y. 635; *Metropolitan Trust Co.* v. *Lake Cities Elec. Ry. Co.,* 100 Fed. Rep. 897; *Farmers' Loan & Trust Co.* v. *Centralia & C. R. Co.,* 96 Fed. Rep. 631; *Third St. & Suburban St. Ry. Co.* v. *Lewis,* 79 Fed. Rep. 196; 173 U. S. 457; *Bibber-White Co.* v. *White River Valley Elec. Co.,* 115 Fed. Rep. 786.)

*Welles V. Moot, Adelbert Moot* and *James C. Sweeney* for Pacific Improvement Company, respondent.  The justice at Special Term had no power to, in effect, vacate the judgment of foreclosure after it had stood unchallenged for over ten years, without even a motion being made, or any cause being even alleged, for vacating, modifying, or annulling any part of such judgment.  (*Le Guen* v. *Gouverneur,* 1 Johns. Cas. 492; *Smith* v. *Bowry,* 1 Johns. Ch. 320; *Standard Fashion Co.* v. *Thompson,* 137 App. Div. 588; *Hudgens* v. *Baugh,* 225 Fed. Rep. 899; *Goeble* v. *Iffla,* 111 N. Y. 170; *Tax Lien Co.* v. *Schultze,* 213 N. Y. 9; *M. T. Co.* v. *C. El. Co.,* 188 Fed. Rep. 1006; *Gilman* v. *Tucker,* 128 N. Y. 190; *Muhlker* v. *Harlem*

*R. R. Co.*, 197 U. S. 544; *Brooks* v. *Wilson*, 125 N. Y. 256; *Veeder* v. *Balser*, 83 N. Y. 156.) The facts appearing upon the receiver's own showing upon this application, and his previous application for substantially the same relief, show that such an order is unjust, unwarranted by precedent, and inequitable, and the Special Term was, therefore, without power to make such order. (*S. L., etc., R. R. Co.* v. *C., etc., R. R. Co.*, 125 U. S. 658; *Lloyd* v. *C. O. & S. R. Co.*, 65 Fed. Rep. 351; *Vatable* v. *N. Y., L. & W. R. R. Co.*, 96 N. Y. 45; *M. T. Co.* v. *T. V. & C. R. R. Co.*, 103 N. Y. 245; *Gregg* v. *Met. Trust Co.*, 197 U. S. 183; *Penn. Steel Co.* v. *N. Y. C. Ry. Co.*, 198 Fed. Rep. 721; *Bibber-White Co.* v. *W. R. V. El. R. R. Co.*, 115 Fed. Rep. 786; *Taylor* v. *D. & E. R. Co.*, 213 Fed. Rep. 622; *M. M. Mfg. Co.* v. *U. S. & M. T. Co.*, 225 Fed. Rep. 961; *U. S. & M. T. Co.* v. *Beatty*, 240 Fed. Rep. 592.)

CHASE, J. The value of railroad property depends to a very large extent upon the business done by the railroad corporation. The business done by the corporation, and the net financial result of such business depend in turn to a very large extent upon the condition of the roadbed and the rolling stock and upon the available facilities for handling satisfactorily and economically passenger and freight transportation.

When all the property of a railroad corporation is temporarily in the immediate control of a court of general jurisdiction and in the possession of a receiver, and it appears necessary to expend a sum of money not then available to reasonably maintain the property in its integrity as a railroad, the court may not only authorize the receiver to borrow the money for such expenditure, but may exercise the power which it possesses in equity over the property so within its control and make the certificates of indebtedness therefor a lien thereon.

If it is necessary to enable the receiver so to borrow the money and it appears to be of sufficient importance to the public and the persons directly interested in the property, such receiver's certificates may be made a lien prior to all other liens on the property of the corporation.

Justice BLATCHFORD in *Union Trust Co. v. Illinois Midland Ry. Co.* (117 U. S. 434) has stated in few words the power of the court and the necessity at times of exercising that power, as follows: " Property subject to liens and claims and debts, of various characters and ranks, which is brought within the cognizance of a court of equity for administration, and conversion into money, and distribution, is a trust fund. It is to be preserved for those entitled to it. This must be done by the hands of the court, through officers. The character of the property gives character to the particular species of preservation which it requires. Unimproved land may lie idle, with only payment of taxes. Improved property should be rented. Movable property that is not perishable may be locked up and kept; but if perishable, it must be sold, by way of preservation. A railroad, and its appurtenances, is a peculiar species of property. Not only will its structures deteriorate and decay and perish if not cared for and kept up, but its business and good will will pass away if it is not run and kept in good order. Moreover, a railroad is a matter of public concern. The franchises and rights of the corporation which constructed it were given not merely for private gain to the corporators, but to furnish a public highway; and all persons who deal with the corporation as creditors or holders of its obligations, must necessarily be held to do so in the view, that, if it falls into insolvency and its affairs come into a court of equity for adjustment, involving the transfer of its franchises and property, by a sale, into other hands, to have the purposes of its creation still carried out, the court, while in charge of the property, has the power, and, under some circumstances, it may

23

be its duty, to make such repairs as are necessary to keep the road and its structures in a safe and proper condition to serve the public. Its power to do this does not depend on consent, nor on prior notice. Consent is desirable, but it is seldom practicable, where the debts exceed the value of the property. Though prior notice to persons interested, by notifying them as parties, first requiring them to be made parties if they are not, is generally the better way, yet many circumstances may be judicially equivalent to prior notice. A full opportunity as in this case, to be heard, on evidence, as to the propriety of the expenditures and of making them a first lien, is judicially equivalent. The receiver, and those lending money to him on certificates issued on orders made without prior notice to parties interested, take the risk of the final action of the court, in regard to the loans. The court always retains control of the matter, its records are accessible to lenders and subsequent holders, and the certificates are not negotiable instruments." (p. 455.)

In *Wallace* v. *Loomis* (97 U. S. 146, 162) it is said: "The power of a court of equity to appoint managing receivers of such property as a railroad, when taken under its charge as a trust fund for the payment of incumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment, cannot, at this day, be seriously disputed. It is a part of that jurisdiction, always exercised by the court, by which it is its duty to protect and preserve the trust funds in its hands."

This court in *Knickerbocker Trust Co.* v. *Oneonta, C. & R. S. R. Co.* (201 N. Y. 379, 384), referring to the two cases from which we have quoted, say: " The power to issue receiver's certificates *paramount to the liens of strangers to the suit* is of a strictly limited nature and the theory

on which the existence of power at all is based is clearly stated in two decisions of the United States Supreme Court." (*Vilas* v. *Page*, 106 N. Y. 439; *Raht* v. *Attrill*, 106 N. Y. 423, 436; *Miltenberger* v. *Logansport Railway Co.*, 106 U. S. 286; *American Brake Shoe & Foundry Co.* v. *Pere Marquette Railway Co.*, 205 Fed. Rep. 14; *Central Trust Co.* v. *M. & N. G. R. Co.*, 75 Fed. Rep. 209; *Central Trust Co.* v. *Tappan*, 6 N. Y. Supp. 918.)

The power of the court to authorize a receiver of a public corporation to borrow money on certificates of indebtedness to protect railroad property and the business of the railroad corporation is established beyond controversy. The power of the court does not depend upon consent or notice. (*Union Trust Co.* v. *Ill. Midland Railway Co., supra;* *Knickerbocker Trust Co.* v. *O., C. & R. S. R. Co., supra;* *Wallace* v. *Loomis, supra;* *Miltenberger* v. *Logansport Railway Co., supra;* *American Brake Shoe & Foundry Co.* v. *Pere Marquette Railway Co., supra.*)

Although power exists in the court to act in the cases mentioned without consent and without notice, the authority so granted is subject to review when the parties interested and opposed to the exercise of the authority are properly before the court. It is said in *Union Trust Co.* v. *Ill. Midland Ry. Co.* (*supra*), quoting from Justice HARLAN, that " Those who take receiver's certificates must be deemed to have taken them subject to the rights of parties who have prior liens upon the property, and who have not, but should have been, brought before the court. While the court, under some circumstances, and for some purposes, and in advance of the prior lienholders being made parties, may have jurisdiction to charge the property with the amount of receiver's certificates issued by its authority, it cannot, without giving such parties their day in court, deprive them of their priority of lien. When such prior lien

holders are brought before the court, they become entitled, upon the plainest principles of justice and equity, to contest the necessity, validity, effect, and amount of all such certificates, as fully as if such questions were then, for the first time, presented for determination. If it appears that they ought not to have been made a charge upon the property, superior to the lien created by the mortgages, then the contract rights of the prior lien holders must be protected. On the other hand, if it appears that the court did what ought to have been done, even had the trustee and the bondholders been before it when the certificates were authorized to be issued, the property should not be relieved from the charge made upon it, in good faith, for its protection and preservation." (p. 460.)

We have thus referred to the authority of the court to direct a receiver of a public corporation in regard to continuing the business of the corporation and in borrowing money on certificates of indebtedness for that purpose because such authority must be kept in mind in reviewing the material facts out of which the question submitted for our consideration herein arose.

The Pittsburg, Shawmut and Northern Railroad Company was formed August 1, 1899, by the merger and consolidation of the Pittsburg, Shawmut and Northern Railroad Company, a corporation of Pennsylvania, with the Central New York and Western Railroad Company, a corporation of New York.

In 1892 the Central New York and Western Railroad Company issued a mortgage on its railroad property to the Central Trust Company of New York as trustee to secure an authorized issue of one million dollars of bonds of which $733,000 are, except as the same have become merged in a judgment of foreclosure, now outstanding. Of such bonds the Pacific Improvement Company is the owner of $650,000, and Frank Sullivan Smith

individually of the remaining $83,000 thereof. That mortgage was the first lien on the property now of the Pittsburg, Shawmut and Northern Railroad Company, the consolidated corporation, but of course it covered only that part of the property of such consolidated corporation as was owned by the Central New York and Western Railroad Company at the time of the consolidation. In 1899, the Pittsburg, Shawmut and Northern Railroad Company issued its mortgage to the Colonial Trust Company, as trustee, to secure an authorized issue of $12,000,000 of five per cent bonds. This mortgage covered all of its property. At the same time or shortly thereafter, the Shawmut Mining Company delivered its mortgage to the Colonial Trust Company as trustee, covering certain coal lands as further security for said bonds. Bonds to the aggregate of $6,000,000 were issued but they have all been refunded except $164,000 thereof. The Colonial Trust Company resigned as trustee under that mortgage and the Hamilton Trust Company was appointed its successor.

In 1902, the Pittsburg, Shawmut and Northern Railroad Company issued its mortgage to the Central Trust Company as trustee to secure $15,000,000 of four per cent bonds. This mortgage covered all of its property. At about the same time the Shawmut Mining Company and the Kersey Mining Company made their mortgages severally to the Central Trust Company as trustee, as further security for said four per cent bonds. Bonds secured by such mortgages aggregating $14,819,600 are now outstanding. A part of these bonds was used to refund the five per cent bonds issued under the mortgage now held by the Hamilton Trust Company as trustee.

On August 1, 1905, this action was commenced by the Central Trust Company of New York in the Supreme Court of this state to foreclose the four per cent mortgage. On the same day Frank Sullivan Smith was appointed

receiver of all the property covered by said mortgage. He qualified and took possession of the mortgaged property and remains in possession thereof, and is operating the same as receiver. The complaint in this action in no way mentions the prior mortgage of the Central New York and Western Railroad Company given in 1892, as stated, nor the five per cent mortgage of the Pittsburg, Shawmut and Northern Railroad Company given in 1899.

The Central Trust Company, as trustee under the mortgage of the Central New York and Western Railroad Company, was not made a party defendant in that action nor were the bondholders under that mortgage or either of them parties thereto.

After the commencement of the action to foreclose the third mortgage as stated the Pacific Improvement Company requested the Central Trust Company to foreclose the mortgage given by the Central New York and Western Railroad Company of which it was the owner of bonds as stated but the Central Trust Company fearing that there might be a conflict of interests growing out of the two foreclosures refused to act, and the Pacific Improvement Company for itself and the other bondholders commenced an action in the Supreme Court of this state in November, 1905, making all parties having subsequent interests in the railroad property in this state covered by the mortgage, except the holders of receiver's certificates, parties to the action, and it prayed for judgment decreeing that its mortgage is a first lien upon the premises in the mortgage described. Leave was granted to make Frank Sullivan Smith, as receiver, a party defendant and he was made a party defendant in that action.

On May 9, 1907, a judgment of foreclosure and sale was entered at Special Term in each of the actions brought in this state as hereinbefore stated. In the

judgment in this action, which is the action to foreclose the third mortgage, it was provided: " The said mortgaged premises, property, rights and interests shall be sold subject to all taxes and assessments which are or shall be at the time of the sale liens upon the same, and also to all outstanding obligations of the receiver, which obligations the purchaser shall assume except and only so far as the court may hereafter direct payment thereof out of the proceeds of such sale."

In the judgment in the action to foreclose the first mortgage on the property in this state, being the action of the Pacific Improvement Company hereinbefore mentioned, it was provided: " That the purchaser or purchasers of said premises, property, rights, interests and assets herein and hereby ordered to be sold and sold aforesaid shall be vested with and shall hold, possess and enjoy said mortgaged premises, property, rights and interests with all the rights of the defendant and all of the rights appertaining thereto, and that the said purchaser or purchasers be let into the possession and control of said premises and property, rights and interests."

The receiver when appointed became a custodian of all the property of the corporation. The possession of such a receiver is the possession of the court and it is not circumscribed by the priority in interest of the mortgage, judgment or claim of the person or corporation upon whose motion he was appointed receiver. As the representative of the court, his power and authority is based upon equitable principles as defined and directed by its orders.

The receiver from time to time petitioned the court for authority to issue certificates of indebtedness to raise money alleged to be necessary for the benefit, protection and preservation of the mortgaged property and orders were from time to time made granting such authority.

Under such orders the receiver on September 1, 1905, issued his certificates of indebtedness to the amount of $200,000 and on March 1, 1906, $622,000. The certificates so issued before the judgments of foreclosure and sale were granted, with others subsequently issued under like orders of the court, aggregate $3,100,000. As the certificates so issued became due and payable other certificates by like orders were issued in renewal or extension thereof and to pay the amounts so expended as provided by said orders. The common form of the prayer of the receiver in his said petitions is for authority and direction to issue certificates of a specified date, amount and time of maturity, and that " Said certificates both as to principal and interest be a lien upon said railroad and mortgaged property prior to the lien of said mortgages and the bonds to secure which the same were executed." Said certificates are each made by orders of the court a debt of said receiver " for the benefit, preservation and protection of the mortgaged properties of said railroad company and said mining companies defendants in said actions and of the creditors and holders of the stock and bonds of said railroad company and to be a lien upon said properties and the net receipts, income and profits thereof prior to the lien of said mortgages or deeds of trust *or any of them heretofore created* upon said properties and are to be recognized as such in any reorganization of said defendant's mortgaged properties by judicial procedure or otherwise and this certificate, principal and interest is to be paid from the moneys realized from said sale prior to any payment on account of said mortgages or deeds of trust or any of them unless sooner paid and cancelled as herein provided, and this certificate shall be and remain a lien upon said mortgaged properties prior to the lien of said mortgages or deeds of trust or any of them until the amount thereof, principal and interest shall be fully paid."

The railroad property has been openly and notoriously in the hands of the receiver since 1905 and the money secured by the receiver's certificates with about $1,000,000 of surplus railroad earnings has been expended upon the property so in the hands of the receiver including the property which was of the Central New York and Western Railroad Company. The plaintiff in this action is the same trust company who is the trustee named in the mortgage given by the Central New York and Western Railroad Company. The receiver in his individual capacity is the owner of $83,000 of the bonds given by that company and the person who was the president of the Pacific Improvement Company (owner of the remaining $650,000 of said bonds) until his death in May, 1915, saw and approved all the orders authorizing the receiver to issue certificates of indebtedness made prior to his death, and he also purchased and paid for the first $200,000 of receiver's certificates issued by the receiver and which certificates expressly recited that they were a first and prior lien on all the property of the corporation.

After May, 1915, and after all of the certificates aggregating $3,100,000 had been issued, it was ascertained that the Pacific Improvement Company claimed that the receiver in his several petitions had not alleged the existence of said mortgage given by the Central New York and Western Railroad Company and that it also claimed that by reason of his failure to allege the existence of said mortgage in the said petition the said certificates of indebtedness were not a lien prior to the mortgage of the Central New York and Western Railroad Company. Thereupon, the receiver upon affidavits in which among other things he asserted that he had omitted to allege the mortgage of the Central New York and Western Railroad Company in his several petitions by inadvertence, asked for an order inserting an allegation

alleging the existence of such mortgage in each of the petitions theretofore filed by him relating to receiver's certificates, *nunc pro tunc* and as of the date of the execution of said petitions severally, and also that the Central Trust Company in its capacity as trustee for the mortgage bondholders of the Central New York and Western Railroad Company be made a party defendant in this action. The order was granted at Special Term, but was reversed at the Appellate Division (*Central Trust Company of N. Y.* v. *Pittsburgh, S. & N. R. R. Co.,* 174 App. Div. 800), and the order of reversal was affirmed in this court. (*Central Trust Co. of N. Y.* v. *Pittsburgh, S. & N. R. R. Co.,* 220 N. Y. 690.)

This court affirmed the order reversing the order amending said petitions *nunc pro tunc* because the alleged inadvertence in preparing the petitions was not one that could be corrected after the rights whatever they were existing upon and by the orders granted thereon had become fixed and established. The relative rights of the trustee under the mortgage of the Central New York and Western Railroad Company and the holders of bonds secured by that mortgage, and the holders of receiver's certificates of indebtedness issued pursuant to the orders as they existed when the application for an order to amend the petitions *nunc pro tunc* was made, and it was sought to make the Central Trust Company as trustee a party defendant could not be changed. We repeat that their relative rights pursuant to the orders had then become fixed and established. New responsibilities of the receiver might arise and new problems require adjustment. New orders might become necessary on the motion of the receiver, but the orders upon which the receiver's certificates had then been issued were in fact based upon the petitions before the court when the orders were granted and they were made without having the Central Trust Company as trustee under the mortgage

of the Central New York and Western Railroad Company before the court as a party or otherwise. It was too late to amend the petitions or bring in a party to affect the rights of persons or corporations interested under or affected by the orders granted upon such petitions.

On June 1, 1917, $525,000 of the certificates outstanding became due and payable. Prior to that date this application was made by the receiver for leave to issue a like amount of certificates to retire the certificates so becoming due and payable. The proceeds of all the certificates then outstanding had been expended by the receiver on the property held by him as such. All of said certificates purported to be a first lien on the corporate property. It was alleged on the application in substance and not materially controverted, that for reasons stated, the certificates of indebtedness to become due and payable could not be paid by the receiver, and that it was impractical for reasons stated, and not materially controverted, without further material delay, to have the railroad property sold for cash, or to carry out a reorganization agreement among the persons and corporations financially interested therein.

The existence of the Central New York and Western Railroad Company mortgage and the judgment entered thereon was shown and the Pacific Improvement Company appeared specially on the hearing and denied the power of the court to make the order applied for by the receiver.

It is also claimed by the improvement company that since the Central New York and Western Railroad Company mortgage has become merged in a judgment of foreclosure and sale the court is now without power to authorize the receiver to borrow money and make the certificates of indebtedness given therefor a lien on the property in his possession prior to the lien of the judgment in foreclosure.

It is quite unnecessary at this time to attempt to

define the rights of persons holding receiver's certificates, if any, issued and outstanding prior to the date of the judgment in the action of the Pacific Improvement Company. Such judgment is binding upon the parties to the action and their privies, only as it speaks from its date. Any order made by the court subsequent to that judgment will depend upon the facts then existing, and the jurisdiction of the court over the persons sought to be bound by the order so made by it. Equity may require that the lien of a judgment of foreclosure and sale, like that of a mortgage, be subordinated to that of receivers' certificates issued to raise money for the maintenance and preservation of the property.

When the receiver and all persons interested in the corporate property or the proceeds thereof and its distribution are before the court for a final adjustment and disposition thereof, those who have not had their day in court on any question in controversy, can be heard, and their claims considered and determined as stated in the cases from which we have quoted herein. With that right reserved no person can justly claim that he has been deprived of his opportunity to be heard upon any question in which he is interested.

Applying the principles and practice that we have stated to the immediate question before us, we find that while the Pacific Improvement Company was not a party to the action in which the order herein was made, it had actual notice of the motion and it was represented in court by counsel and thus had a full opportunity to be heard thereon. Such a notice and opportunity to be heard may, as stated by Justice BLATCHFORD in the opinion from which we have quoted, be a judicial equivalent to a formal notice to a party appearing in the action. We think that the notice to the improvement company was, for the purposes of the motion made herein, such a notice in this case and that it should have pre-

sented to the court such facts as were in its possession and such arguments as it desired to make relating to the necessity for and advisability of renewing the certificates as prayed for in the petition. The Appellate Division held that the Special Term did not have power to determine the question of the priority of the receiver's certificates upon the application and the papers before it as against the first mortgage bondholders or their trustee named in said first mortgage and for that reason the order was reversed as in the order of reversal made by that court stated. That court did not consider on the merits the question as to the necessity for and advisability of making the order as made by the Special Term.

The cause should be sent back to the Appellate Division for it to pass upon the merits of the controversy relating to the necessity for and advisability of renewing the receiver's certificates as prayed for in the petition and as provided by the order of the Special Term.

The order of the Appellate Division reversing the order of the Special Term, entered May 19, 1917, should be reversed, with costs, and question certified answered in affirmative, and case remitted to Appellate Division for consideration in accordance with the opinion.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, CARDOZO and ANDREWS, JJ., concur; POUND, J., not voting.

Order reversed, etc.