FRANK SULLIVAN SMITH, Individually, and as Receiver, etc., Plaintiff, *v.* PACIFIC IMPROVEMENT COMPANY and Others, Defendants.

(Supreme Court, Allegany Special Term, October, 1918.)

Railroads — receiver's certificates — action to declare receiver's certificates liens prior to a certain mortgage — complaint dismissed.

> A railroad corporation having mortgaged its property was consolidated with another railroad corporation at a time when chapter 565 of the Laws of 1890 was in effect. A bondholder under the mortgage made before the merger brought an action to foreclose the same and the mortgagor, the new corporation, its receiver and others were made parties defendant and a decree of foreclosure was entered. Thereafter the trustee under a mortgage of the new corporation foreclosed the same, in which action a receiver of the properties of the new corporation was appointed and a decree of foreclosure and sale was made. In neither of the decrees in the above foreclosure actions was there any attempt to make the receiver's certificates liens prior

31      .

to the lien of the mortgage given by the railroad before the merger. In an action thereafter brought by the receiver, both in his official capacity and as an individual, to declare the receiver's certificates liens prior to the mortgage given by. the railroad before said merger, *held:*

In the absence of fraud, the court is without power to set aside the decree of a court of equal jurisdiction with all the necessary and proper parties before it and to subordinate the rights of the bondholders under such decree to the rights of the holders of the receiver's certificates.

If the receiver had any standing to urge the priority of such certificates issued under the orders of the court he had that power when he was summoned to appear in the action to foreclose the prior mortgage, and having acquiesced in the judgment therein for years he cannot maintain an action to secure such priority.

While the .court having jurisdiction of all the property of the railroad corporation may impose the lien of receiver's certificates ahead of prior mortgages, it is only to the extent that the court has jurisdiction of the property, and it can only acquire jurisdiction of so much of the subject matter of. the action as all the parties before it hold.

ACTION to declare receiver's certificates liens prior to certain judgments and for other equitable relief.

Alton B. Parker, Frederick W. Frost, C. Walter Randall and D. D. Dickson, for plaintiff.

Adelbert Moot and Welles V. Moot, for defendant Pacific Improvement Company.

O. C. Sanborn, for defendant Central Trust Company.

WOODWARD, J. This action is brought primarily for the purpose of having the certificates issued by Frank Sullivan Smith, as receiver of the Pittsburg, Shawmut and Northern Railroad Company, declared a lien upon the Central New York and Western Railroad Company prior to the bonds and mortgage, made and executed by the latter company on the 15th day of Decem-

ber, 1892, and merged in a decree of foreclosure and sale granted May 9, 1907, in an action entitled " Pacific Improvement Company v. The Central New York & Western Railroad Company, The Pittsburg, Shawmut & Northern Railroad Company, Frank Sullivan Smith, as Receiver of the Pittsburg, Shawmut & Northern Railroad Company, and Central Trust Company of New York as Trustee," and duly entered in the office of the clerk of Allegany county on the 10th day of May, 1907. In addition, it is asked that the sale of the property of the Central New York and Western Railroad Company be stayed, pending the determination of this litigation, and a temporary injunction is now in effect.

The case, so far as it relates to Frank Sullivan Smith individually, is predicated upon the alleged fact that none of the property involved in a certain branch line of the Central New York and Western, and described in the notice. of sale, belonged to the said railroad company. Assuming this to be the fact, it could give no right to that portion of the relief demanded in respect to the priority of the receivers' certificates, and to this extent, at least, it may be disregarded in the consideration of the case.

Nor am I able to discover in this alleged fact any reason for enjoining the sale of the premises covered by the mortgage and the decree of the court. It is well established that notwithstanding the fact that the mortgage in terms covers the property of a stranger, and such mortgage is duly foreclosed, it does not operate to divest the true owner of his property, unless he is made a party to the action in such a manner as to demand an adjudication as to his rights. *Lewis* v. *Smith,* 9 N. Y. 502, 516; *Rathbone* v. *Hooney,* 58 id. 463, 467; *Tax Lien Co.* v. *Schultze,* 213 id. 9, 14. " It

is the proper purpose and scope of a foreclosure suit," say the court in *Rathbone* v. *Hooney, supra,* " to bar interests in the equity of redemption, and the decree does not affect rights paramount to those of the mortgagor and mortgagee." Mr. Smith was not a party in his individual capacity to the foreclosure suit in which the decree in question was entered, and if he has any property rights in the branch railroad covered by the mortgage of the Central New York and Western Railroad Company he is as secure in those rights after the sale as before.

So far, then, as Mr. Smith individually is concerned, there appears to be no ground for the relief demanded in the complaint, and this feature of the litigation may be dropped out of consideration. The court in the foreclosure action of the Pacific Improvement Company against the Central New York and Western Railroad Company never had any jurisdiction either of Mr. Smith personally, nor of the subject-matter of his property rights in the branch railroad. It made no pretense of dealing with any of his rights as an individual, and a decree binds only those who are parties to it. *Stevens* v. *Union Trust Co.,* 57 Hun, 498, 513.

It is true that Mr. Smith personally appears to be the owner of a small number of the bonds secured by the Central New York and Western Railroad Company mortgage, but there are no allegations of the complaint which show that he will suffer any injury through the sale of the property mortgaged to secure the payment of these bonds, and no such fact appears from the evidence, so we may pass directly to the real question involved in this litigation, and that is the power of this court, upon the suit of the receiver under a second mortgage, to set aside the decree of a court

of equal jurisdiction, with all the necessary and proper parties before it, and to subordinate the rights of the bondholders under such decree to the holders of the receiver's certificates. The statement of the question, it seems to me, suggests the answer; in the absence of fraud — and no fraud is suggested — this court has no such power.

Having reached this conclusion, it may be that the discussion should end here, but the case has been elaborately tried; the record presents several thousand pages of evidence, and it has been argued with great skill and learning. It may not, therefore, be out of place to present the views which are suggested in connection with the problems presented, that the appellate courts may understand the reasons upon which the conclusion rests, and may have the advantage of any suggestions which a discussion may bring to light.

My view of this case makes it unnecessary to go into the details of the evidence to determine whether there are equities to be adjusted, but it is important to an understanding of the principles involved that we get a comprehensive view of the controlling facts. The Central New York and Western Railroad Company appears to have originated in an oil boom in Allegany county, N. Y., some time prior to 1892, and to have extended to the vicinity of Hornellsville in Steuben county. On the 1st day of November, 1892, the Central New York and Northern Railroad Company was organized under the laws of the state of New York, and was authorized to build and maintain a railroad from Wayland to a connection with the Central Company railroad at or near Macedon in the county of Wayne, where a connection was to be made with the New York Central lines and the Barge canal. Subse-

quently these two corporations, the Central New York and Northern and the Central New York and Western Railroad Companies were merged under the name of the latter company, with authority to construct and maintain a railroad from Olean, Cattaraugus county, through Allegany county, to Macedon. This all occurred before any of the matters relating to this litigation.

On the 15th day of December, 1892, the Central New York and Western Railroad Company, originating as above stated, executed and filed in the various counties involved its mortgage upon its railroad properties and franchises, the railroad being described as " extending from a point near the station house of the Western New York & Pennsylvania Railroad Company in the village of Olean, in the county of Cattaraugus, through the towns of Olean and Portville, in the said county of Cattaraugus, through the towns of Genesee, Boliver, Wirt, Friendship, Amity and Angelica, in the county of Allegany, to the village of Angelica, in said county; and from a point on the line of the railroad of the Genesee Valley Canal Railroad Company, at or near Rockville, in the town of Belfast, in the said county of Allegany, and running thence in a northwesterly direction through the towns of Belfast and Angelica, to the said village of Angelica, at a junction point with the said line of road from Olean, first hereinbefore described, and thence through the towns of West Almond, Birdsall, Grove and Burns in the county of Allegany, and the towns of Dansville and Wayland, in the county of Steuben, to a point on the line of the railroad of the New York, Lackawanna & Western Railway Company, at or near the village of Perkinsville in the said county of Steuben, with a branch railroad extending from a junction with the

railroad of the said Central New York & Western Railroad Company, at or near Hornellsville Junction, in said county of Allegany, through the township and village of Burns, in said county of Allegany; and the' township and village of Arkport and the township of Dansville, in said county of Steuben, to a point upon or near the left bank of Canacadea creek, at or near its confluence with the Canisteo River in the city of Hornell, formerly Hornellsville, in said county of Steuben, all in the state of New York, being in all about ninety-two miles of railroad.''

This railroad property had no connection with any other railroad; it was a separate and distinct entity, as much so as any farm in any of the counties through which it extended. The mortgage was given to secure an issue of bonds, and in the regular course of business a large block of these bonds came into the ownership of the Pacific Improvement Company, a corporation organized and doing business under the laws of the state of California, which corporation is the principal defendant in this action. These bonds represented an obligation of the Central New York and Western Railroad Company to pay upon the principal annually a given rate of interest until the day of their maturity. As a matter of familiar knowledge to all, such a form of security, for the payment of which, according to its tenor, all the obligor's franchises, properties and revenues were mortgaged, would induce the investment of their moneys by all who desired a well-secured corporate obligation bearing a high rate of interest, and having a long period of existence (*Polhemus* v. *Fitchburg R. R. Co.,* 123 N. Y. 502, 509), and it was to such a contract that the bondholders became parties, through the trustee, under the mortgage. '' The word ' mortgage,' taken in its literal sense, and as it

would be employed by persons dealing with legal rights,'' say the court in the case last above cited, '' means the liability impressed by the company upon the property then owned, or thereafter to be acquired,'' and this conveys a very different idea from that involved in an investment in stock in a railroad corporation. The stockholder takes all the risks of the enterprise; he agrees that the bondholders shall have a first lien upon all the tangible and intangible property of the corporation, and the purchaser of the bonds of such a corporation is not in law called upon to accept any other risks than those for which he has contracted. Undoubtedly the rule is that in an action to foreclose the mortgage here in question, the court might have appointed a receiver, and it might have authorized, as against the bondholders, the issuance of certificates for the purpose of raising funds to operate the railroad during the time necessary to a sale of the property, which certificates might have been made a lien prior to that of the bond holders; this is one of the limitations upon the contract which courts of equity have long enforced for the protection of all the parties interested, including the right of the public to have railroads perform the functions for which they were created. '' In railroad cases,'' say the court in *Stevens* v. *Union Trust Co.,* 57 Hun, 498, 513; followed, 69 id. 460; affd., 144 N. Y. 50, '' the courts have gone further than in other cases in displacing prior liens in order to preserve and operate the railroad, *but only as between the parties to the action, actual or constructive. They can create no lien against persons not such parties, and can displace none. (Raht* v. *Attrill,* 106 N. Y. 423, and cases there cited.)''

With the mortgage of 1892 in full force and effect

the Central New York and Western Railroad Company on or about the 1st day of August, 1899, entered into a joint agreement of consolidation under the provisions of chapter 565 of the Laws of 1890, with the Pittsburg, Shawmut and Northern Railroad Company, a corporation of the state of Pennsylvania, by which the Central New York and Western Railroad Company was merged in and became known as an integral part of the Pittsburg, Shawmut and Northern Railroad Company, which latter corporation was authorized to issue its capital stock in the sum of $12,000,000 with power and authority to issue its bonds for an equal amount, to be known as first mortgage five per cent fifty-year gold bonds, to be secured by a mortgage or deed of trust upon any of its railroads, properties, real and personal, and also its rights, privileges, contracts and franchises, and to give in exchange said bonds at par for the debts of the respective corporations, parties thereto, including $1,000,000 bonds at par value theretofore issued by the Buffalo, St. Mary's and Southwestern Railroad Company of Pennsylvania, and a like amount for the Central New York and Western Railroad Company's issue, a large portion of which was then outstanding. Acting under this power and authority the Pittsburg, Shawmut and Northern Railroad Company took the necessary steps, and issued its mortgage or deed of trust to the Colonial Trust Company of New York, as trustee, to secure the $12,000,000 of bonds so authorized, and caused the same to be duly recorded in all the counties in this state which were embraced in the railroad thus reorganized and merged. Subsequently, and on or about the 1st day of February, 1902, the Pittsburg, Shawmut and Northern Railroad Company inaugurated a new scheme of finance, and

duly executed its mortgage or deed of .trust to the defendant Central Trust Company of New York upon all its properties heretofore mentioned, as well as upon 4,993 shares of the capital stock of the Shawmut Mining Company, a corporation of Pennsylvania, out of a total issue of 5,000 shares, and 9,993 shares of the capital stock of the Kersey Mining Company, a corporation of Pennsylvania, out of a total of 10,000 shares, to secure the issue of $15,000,000 of four per cent fifty-year bonds. The conceded purpose of this latter issue was to retire the previous five per cent bonds, and the record shows that, with the exception of $164,000, all of such five per cent bonds have been retired, so that the first mortgage, for practical purposes, is substantially out of the way. Later the Hamilton Trust Company of New York was substituted as trustee under the five per cent mortgage.

At the time of the merger in 1899, it was expected that the bonds of the Central New York and Western Railroad Company would be retired by the new issue of securities, and contracts for that purpose were entered into, but owing to the failure of the banking house which undertook the work of adjustment the plan failed, and the defendant Pacific Improvement Company became the owner of 650 of these bonds, which it held in 1905, and still holds. In the year 1905, the Pacific Improvement Company, having been refused action on the part of the trustee to foreclose the mortgage underlying its bonds of the Central New York and Western Railroad Company, brought an action in behalf of the bondholders in equity to foreclose the mortgage, and this action resulted in a foreclosure decree, which was duly entered in the office of the county clerk of Allegany county on the. 10th day of May, 1907. The defendants

in that action were the Central New York and Western Railroad Company, the Pittsburg, Shawmut and Northern Railroad Company, Frank Sullivan Smith, as receiver of the Pittsburg, Shawmut and Northern Railroad Company, and Central Trust Company of New York, as trustee, who, it will be observed, are the same parties who are involved in the present litigation.

When the merger of 1899 went into effect chapter 565 of the Laws of 1890 was in effect. Section 70 provided for the consolidation of corporations owning continuous lines, whether in this state or a portion of them in other states. Sections 71 and 72 provided the details of the proceedings and for the new corporation, and section 73 declared that " The rights of all creditors of, and all liens upon the property of, either of such corporations, parties to such agreement and act, *shall be preserved unimpaired, and the respective corporations shall be deemed to continue in existence to preserve the same,* and all debts and liabilities incurred by either of such corporations shall thenceforth attach to such new corporation, and be enforced against it and its property to the same extent as if incurred or contracted by it."

" It was the evident purpose of this statute," say the court in *Vilas* v. *Page,* 106 N. Y. 439, 462, "that the existing status of each separate company should, as respects creditors and bondholders, remain unimpaired and unaffected by the consolidation," and in *Polhemus* v. *Fitchburg R. R. Co.,* 123 N. Y. 502, 511, the court say that the " true theory of this act is that each consolidating company survives in the consolidated company, and that it represents each company in its claims and its obligations, but as to the mortgage liabilities the properties acquired remain affected only as they were affected before the consolidation. Whatever the

liability created by the mortgage instrument, it shall not be deemed to be extended, or to affect the new company, otherwise than might result from a foreclosure.'' In speaking of a like statutory provision, the court in *Irvine* v. *New York Edison Co.*, 207 N. Y. 425, 430, say: '' This reservation of the rights of creditors permits them to proceed against the debtor corporation, notwithstanding such corporation is merged into another. The rights of creditors include the right to sue the debtor corporation and to take the property which was of the debtor corporation by execution issued upon a judgment obtained against such debtor. Such right rests upon the express terms of the statute and does not necessarily depend, as has been suggested, upon the existence and a finding of a fraudulent transfer.''

It will thus be seen that the merger of 1899 was consummated under a statute which made one of the conditions of such merger that the constituent corporations should remain in being for the purpose of meeting obligations of creditors and lienors; that they should continue to exist that they might sue or be sued in respect to prior engagements, and that the properties should be subject to the lien of prior incumbrances or of such judgments as should be procured against the corporations. In accepting this privilege the corporations must be deemed to have accepted the conditions imposed, and persons investing in the securities of the consolidated corporation, or in the certificates of its receiver, must be presumed to have known the law, and to have purchased their securities in the light of the statutory provision above quoted.

Subsequent to the merger above mentioned, and on or about the 1st day of August, 1905, the Central Trust Company of New York, as trustee under the four per

cent mortgage, brought an action to foreclose such mortgage. The defendants named in that action were the Pittsburg, Shawmut and Northern Railroad Company, Shawmut Mining Company and the Kersey Mining Company. In this action Frank Sullivan Smith was appointed receiver of the properties of the Pittsburg, Shawmut and Northern Railroad Company and of the two mining companies covered by the four per cent mortgage, but no mention was made of the Central New York and Western Railroad Company, nor of the trustee under the mortgage of the latter company. This suit was prosecuted to a decree of foreclosure and sale, dated May 9, 1907, and such decree was duly entered in the office of the clerk of Allegany county on the 10th day of May, 1907.

It will be observed that the final decree was made and entered simultaneously with the decree in the action of the Pacific Improvement Company against the Central New York and Western Railroad Company, the Pittsburg, Shawmut and Northern Railroad Company, Frank Sullivan Smith, as receiver of the Pittsburg, Shawmut and Northern Railroad Company, and Central Trust Company of New York, as trustee, and in neither decree is there any attempt to make the receiver's certificates a lien prior to the lien of the Central New York and Western Railroad Company's mortgage. In the foreclosure of the Central New York and Western mortgage, the decree specifically makes the mortgage a first lien upon the premises brought within the jurisdiction of the court, and in the contemporaneous decree it is adjudged that " there is due upon the bonds of the defendant Pittsburg, Shawmut & Northern Railroad Company, secured by the mortgages of the defendants Pittsburg, Shawmut & Northern Railroad Company, Shawmut

Mining Company and Kersey Mining Company, bearing date respectively February 1, 1902, and February 1, 1902, which said mortgages were made, executed and delivered by the defendant, Pittsburg, Shawmut & Northern Railroad Company and the predecessors in title of the defendants Shawmut Mining Company and Kersey Mining Company, to the plaintiff as trustee, for the equal benefit of the holders of the fifteen million dollars of bonds of the defendant, Pittsburg, Shawmut & Northern Railroad Company,'' the sum of $16,054,566.66, with interest from the 1st day of March, 1907, and it is ordered, adjudged and decreed '' that the defendants in this action,'' are '' barred and foreclosed of all right, title, interest, claim, lien and equity of redemption of, in, to or in respect to the mortgaged premises, property, rights and interests described in said mortgage,'' and that '' said mortgaged premises and property, real and personal, rights and interests hereinafter set forth and mentioned and described in the amended complaint in this action and in the said mortgages,'' be sold, etc.

Under the provisions of chapter 565 of the Laws of 1890, as well as by the fair reading of the decrees in these contemporaneous actions in the same court in the same county, and the pleadings in the actions, the property of the Central New York and Western Railroad Company never came within the jurisdiction of the court in the action in which Mr. Smith was appointed receiver, except to the extent of the rights which the consolidated corporation might have in the Central New York and Western railroad after the payment of the bonds secured by the mortgage of 1892. The consolidated corporation undoubtedly owned the equity of redemption at the time the receiver was appointed in the four per cent fore-

closure action, and the court acquired jurisdiction of
the parties, and of the subject-matter before it, but,
from the nature of the case, it could only acquire juris-
diction of so much of the subject-matter as all the
parties before it held. *Stevens* v. *Union Trust Co.,*
57 Hun, 498, 513; 69 id. 460, 462; 144 N. Y. 50. So
long as the mortgagee under the Central New York
and Western mortgage remained passive, the receiver
in the four per cent foreclosure had a right to the pos-
session of the Central New York and Western rail-
road property, and to the revenues of such corporation
(*Polhemus* v. *Fitchburg R. R. Co.,* 123 N. Y. 502, 510),
but when the Pacific Improvement Company (on the
refusal of the trustee to act) brought a representative
action and summoned the Pittsburg, Shawmut and
Northern Railroad Company and its receiver, as
defendants, for the purpose of foreclosing the Central
New York and Western mortgage, it acquired juris-
diction of the proper parties and the subject-matter
embraced within that mortgage, and the practice of
moving before one judge at Special Term to override
the order or judgment of another judge at Special
Term is not sanctioned by any provision of the Code
of Civil Procedure; it amounts virtually to an appeal
from one Special Term to another for a review of the
former judgment or order, while the Constitution and
laws of this state provide distinct appellate tribunals
for such reviews. *Platt* v. *New York & Sea Beach
Railway Company,* 170 N. Y. 451, 458. The court
having jurisdiction of the proper parties, and of the
subject-matter, foreclosed the Central New York and
Western mortgage, and decreed the sale of the prop-
erty covered by the mortgage, for the purpose of
paying the outstanding bonds. It made the decree,
declaring the same a lien prior to all rights of the

defendants in that action, and none of the defendants appealed from that decree, and it has never been suggested that there was any lack of jurisdiction in that action, or that the decree was in any manner tainted with fraud. The decree, by the failure of the defendants to appeal within the time limited by law, became final and unalterable, because no further right of appeal or review existed, and it became a property right of which the plaintiff could not be deprived without due process of law. *Germania Savings Bank* v. *Suspension Bridge,* 159 N. Y. 362, 368; *Livingston* v. *Livingston,* 173 id. 382, 383, and authorities there cited.

If the receiver had any standing to urge the priority of the certificates issued under the orders of the court under any circumstances he had that power when he was summoned to appear in the Central New York and Western foreclosure action in 1905, and, having acquiesced in that judgment for years, he cannot now come into this court and maintain this action. Every person and corporation having any apparent interest in the foreclosure action here under consideration was present, and if there is any such thing as a conclusive adjudication it seems to me it must exist here and bar the present action. The various efforts which have been made to accomplish the result sought in this action by indirect processes, and which have severally failed, cannot, in the absence of some defect of a jurisdictional or fraudulent nature, prevail in this direct action. *Drake* v. *New York Suburban Water Co.,* 36 App. Div. 275, 278.

It only remains to consider whether the recent determination of the court in *Central Trust Co.* v. *Pittsburg, Shawmut & Northern R. R. Co.,* 223 N. Y. 347, has in any manner restated the law to an extent which calls upon this court to assume jurisdiction.

While the court in its opinion goes over much of the detail of this controversy, the question before the court, on an appeal by permission from an order of the Appellate Division of the Supreme Court, which reversed an order of the Special Term authorizing an issue of receiver's certificates in so far as it provided that the lien of such certificates should be prior to that of the first mortgage covering certain of the railroad properties, was " Had the Special Term power to determine the question of the priority of the receiver's certificates, upon the motion and the papers before it, as against the first mortgage bondholders or their trustee, named in the first mortgage? "

It is to be observed, in the first place, that the attention of the court was not called to the provisions of chapter 565 of the Laws of 1890, and the construction which the court had placed upon the statute, under which the merger took place. In its discussion in the *Central Trust Co.* v. *Pittsburg, Shawmut & Northern Railroad Co. Case, supra,* the court declares that " When all the property of a railroad corporation is temporarily in the immediate control of a court of general jurisdiction and in the possession of a receiver, and it appears necessary " it may authorize the borrowing of money upon receiver's certificates, and that in a proper case it may make such certificates " a lien prior to all other liens on the property of the corporation," quoting the language of the court in *Union Trust Co.* v. *Illinois Midland R. Co.,* 117 U. S. 434. Further along the court say that " The receiver when appointed became a custodian of all the property of the corporation. The possession of such a receiver is the possession of the court and it is not circumscribed by the priority in interest of the mortgage, judgment or claim of the person or corporation upon whose motion he was

32

appointed receiver." There can be no question about these general propositions, but " general expressions are to be taken in connection with the cases in which those expressions are used." *Cohens* v. *Virginia,* 6 Wheat. 264, 399. " Principles are not established by what was said, but by what was decided, and what was said is not evidence of what was decided, unless it relates directly to the question presented for decision." *People ex rel. Metropolitan St. R. Co.* v. *Tax Commissioners,* 174 N. Y. 417, 447. No case to which our attention has been called has ever held that distinct property, owned by a distinct individual or corporation, and mortgaged to secure the debt of such individual or corporation, could be made subject to the lien of receiver's certificates issued upon the foreclosure of a mortgage upon a different property, to secure a different obligation, and made by a different individual or corporation. The mortgage made and recorded by the Central New York and Western Railroad Company in 1892 covered a distinct railroad property. It had no relation whatever to the Pittsburg, Shawmut and Northern Railroad Company; that corporation had no being whatever until some ten years later. When the merger was made in 1899, the statute which authorized such a merger distinctly provided that " the rights of all creditors of, and all liens upon the property of, either of such corporations, parties to such agreement and act, shall be preserved unimpaired, and the respective corporations shall be deemed to continue in existence to preserve the same," and when the receiver was appointed in the action to foreclose the second mortgage of the Pittsburg, Shawmut and Northern Railroad Company, the court acquired no jurisdiction of the property which was of the Central New York and Western Railroad Company, which corporation continued to exist for the

purpose of meeting the obligations secured by its
mortgage of 1892. While there is no doubt, therefore,
of the general proposition that the court having juris-
diction of all the property of a railroad corporation
may impose the lien of receiver's certificates ahead
of prior mortgages, in the manner stated by the court,
it is only to the extent that the court has jurisdiction
of the property. So long as the mortgage continued in
existence, the Central New York and Western Rail-
road Company continued in existence and owned the
property covered by the mortgage, and the Pittsburg,
Shawmut and Northern Railroad Company owned, for
the purposes of its subsequent mortgage, only so much
of the Central New York and Western Railroad Com-
pany property as should survive the discharge of the
lien of its mortgage. This property of the Pittsburg,
Shawmut and Northern Railroad Company, limited
by statute, was " all the property of the corporation "
to come within the jurisdiction of the court, and the
possession of the receiver is, of course, " the posses-
sion of the court, and it is not circumscribed by the
priority in interest of the mortgage, judgment or claim
of the person or corporation upon whose motion he
was appointed receiver." Of course, if the Central
New York and Western Railroad Company mortgage
was a first mortgage upon the Pittsburg, Shawmut
and Northern railroad, and Mr. Smith was appointed
receiver in an action to foreclose the third mortgage
upon the same property, the court would have the
power to make the receiver's certificates a prior lien
to the first mortgage in a proper case, and the juris-
diction would not be limited to the equities involved
in the third mortgage; it would reach and cover the
entire property of such railroad company. But the
Central New York and Western Railroad Company's

mortgage, made in 1892, before there was any Pittsburg, Shawmut and Northern Railroad Company, is not a first mortgage in any such sense. It has no relation, in law or equity, to the mortgage under which Mr. Smith was appointed receiver, and the statute under which the consolidation was effected specially provides that the properties shall not be merged to the prejudice of the rights of lien holders or creditors. The five per cent mortgage of the Pittsburg, Shawmut and Northern Railroad Company was the first mortgage in its relation to that railroad, and when the second or four per cent mortgage was foreclosed the entire property of that railroad corporation, including the equity of redemption under the Central New York and Western Railroad Company mortgage, came under the jurisdiction of the Supreme Court, and it is not to be doubted that under a proper state of facts the court would have the power to make the receiver's certificates a first lien upon the property thus within its jurisdiction, without the presence of the holders of the first mortgage, subject to their right to be subsequently heard. *Union Trust Co.* v. *Illinois Midland R. Co.,* 117 U. S. 460. The court acquired jurisdiction of the parties and of the subject-matter before it, but, from the nature of the case, it can only acquire jurisdiction of so much of the subject-matter as all the parties before it hold (*Stevens* v. *Union Trust Co.,* 57 Hun, 498, 513; *Stevens* v. *Central National Bank,* 69 id. 460; *Stevens* v. *Central National Bank,* 144 N. Y. 50), and the parties before the court in the action in which Mr. Smith was appointed receiver did not hold any part of the property of the Central New York and Western railroad, and the holders of the bonds of the latter corporation did not, either in law or equity, dedicate their money to the experiments undertaken by the receiver of the

Pittsburg, Shawmut and Northern Railroad Company. We may well say, in the language of the court in *Raht* v. *Attrill,* 106 N. Y. 423, 431, that " This case illustrates what I apprehend to have been the common experience where a court departing from its appropriate judicial function has undertaken to manage and carry on the business of a failing and insolvent corporation."

If the court in *Central Trust Co.* v. *Pittsburg, Shawmut & Northern Railroad Co.,* 223 N. Y. 347, merely held, as it does, that the Pacific Improvement Company had such notice of the motion to reissue certificates of the receiver for the purpose of taking up those which had become due, and to make such reissued certificates a lien ahead of the mortgage of the Central New York and Western, as called upon it to assert its rights before the court, sending the matter back to the Appellate Division to consider the question upon the merits, it cannot be considered an authority for this court to take up the question anew, or to disregard the clear provisions of the statute, which deprives any court of jurisdiction over the property of the Central New York and Western Railroad Company, except to enforce the mortgage contract. "As between creditors by mortgage and general creditors, the former are entitled to priority of payment out of the mortgaged property by their contract, and by the law of the land. The law recognizes the validity of contracts of mortgage and enforces them, subject to certain regulations for the protection of subsequent purchasers or incumbrancers. The lien of the mortgage attaches not only to the land in the condition in which it was at the time of the execution of the mortgage, but as changed or improved by accretions, or by labor expended upon it while the mortgage was in existence. Creditors having debts

created for money, labor or materials used in improving the mortgaged property, acquire on that account no legal or equitable claim to displace or subordinate the lien of the mortgage for their protection. * * *

" It would be unwise, we think, to extend the power of the court in dealing with property in the hands of receivers to the practical subversion or destruction of vested interests, as would be the case in this instance if the order of August 17th should be sustained. It is best for all that the integrity of contracts should be strictly guarded and maintained and that a rigid, rather than a liberal construction of the power of the court to subject property in the hands of receivers to charges, to the prejudice of creditors, should be adopted." *Raht* v. *Attrill, supra.* The trustee and bondholders under the Central New York and Western Railroad Company mortgage are neither necessary nor proper parties to the action in which Mr. Smith was appointed receiver. The property covered by their mortgage had no relation to that covered by the Pittsburg, Shawmut and Northern Railroad Company mortgage, under the statute governing the merger of the railroads, and the court can create no lien against persons or corporations not such parties, and can displace none. *Stevens* v. *Union Trust Co.,* 57 Hun, 498, 513, and authority there cited.

I have no doubt that had the court's attention been called to the statute it would have been more particular to have defined the limits of the powers of the courts below, but in any event I am unable to discover any justification for this court to review the acts of the court in the foreclosure action under the Central New York and Western Railroad Company mortgage.

The complaint should be dismissed, with costs.

Judgment accordingly.